**Richard T. HINKEL, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 5, 1998.

Decided Aug. 3, 1998.

Charles W. Gordon, Easton, for appellant.

Timothy P. Wile, Asst. Counsel In-Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before McGINLEY and LEADBETTER, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Richard T. Hinkle (Licensee) appeals from an order of the Court of Common Pleas of Northampton County (trial court) that dismissed Licensee's statutory appeal from the suspension of his operating privilege by the Department of Transportation, Bureau of Driver Licensing (Department) pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1] We affirm.

On April 26, 1997, at approximately 1:00 a.m., Officer Richard Gruver was dispatched to investigate a suspicious vehicle in a parking lot. Officer Gruver stopped Licensee's vehicle after it exited the lot and he observed a strong odor of alcohol on Licensee's breath. According to Officer Gruver, Licensee failed one sobriety test and refused to perform additional tests. Officer Gruver placed Licensee under arrest and transported him to the Northampton DUI center. While being transported, Licensee stated that he wished to kill himself.

At the DUI center, Officer John P. Lakits read Licensee the implied consent warnings. Licensee refused to submit to a blood test, repeatedly claiming he did not understand anything said to him. Officer Lakits then recorded a refusal. Because of his suicidal statements, Licensee was taken to Easton Hospital for evaluation of his mental condition.

Officers Gruver and Lakits testified at the *de novo* hearing before the trial court. In addition, the Department entered a videotape of the proceedings at the DUI center.

Licensee submitted the deposition of Frank J. Gilly, M.D. and the doctor's medical reports into evidence. Dr. Gilly had been treating Licensee since 1982. In 1995, Dr. Gilly diagnosed Licensee with reactive depression and placed him on antidepressant medication. Licensee soon recovered. Dr. Gilly saw Licensee on July 16, 1997 and, as part of that examination, he reviewed the April 26, 1997 records from Easton Hospital. Based on his review of those records and his examination of Licensee, Dr. Gilly concluded that Licensee was profoundly depressed on the night of April 26, 1997. Dr. Gilly opined that Licensee's depression alone would have prevented Licensee from being able to make a knowing and conscious refusal to submit to chemical testing.[2]

By order dated October 9, 1997, the trial court dismissed Licensee's appeal, concluding

---

1. Section 1547(b) of the Code provides for the suspension of a driver's license for a period of one year upon refusal to submit to chemical testing to determine blood alcohol content.

2. The trial court set forth the following text of the doctor's testimony in its opinion as follows:

    By the attorney for Hinkel [Licensee]:
    Q   What effect then would the profound depression have on his decision-making abilities, if any?
    A   It could certainly affect his capacity to make decisions on his own behalf.
    Q   So based upon your treatment of Mr. Hinkel, and your examination, do you have an opinion, to a reasonable degree of medical certainty, as to whether Mr. Hinkel made a knowing and conscious decision that evening to refuse the blood test?
    A   Based on my examination and interview with the patient in July, I don't believe he possessed appropriate decision-making capacity during the emergency room visit in April ...

that Dr. Gilly's testimony was insufficient to sustain Licensee's burden of proving that Licensee was incapable of making a knowing and conscious refusal to the chemical test. This was based on Dr. Gilly's inability to rule out the effect of the alcohol consumption.

On appeal to this Court[3] Licensee argues that Dr. Gilly's testimony established that he was unable to make a knowing and conscious refusal due to his mental condition.

A licensee's operating privilege may be suspended as a result of a refusal to submit to a chemical test if the Department establishes that a motorist: 1) was arrested for driving while under the influence of alcohol; 2) was asked to submit to a chemical test; 3) refused to do so; and 4) was specifically warned by the police officer that a refusal would result in a revocation of his driver's license. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Once the Department satisfies its burden of proof, the burden then shifts to the licensee to prove that his refusal was not knowing and conscious and that such inability was not caused, in whole or in part, by his consumption of alcohol. *Gombar v. Department of Transportation, Bureau of Driver Licensing,* 678 A.2d 843 (Pa.Cmwlth.1996).

Licensee argues that Dr. Gilly's testimony was sufficient to satisfy his burden of proof. However, as the testimony in footnote number 2 reveals, Dr. Gilly could not rule out the possibility that Licensee's incapacity may have been due in part to his alcohol consumption.

Licensee also argues that the trial court erred in relying on Dr. Gilly's response to a hypothetical question, which assumed a fact not in evidence. The *Gombar* court held that such reliance constitutes reversible error. In this case, however, the trial court's opinion makes clear that it relied on testimony which preceded the hypothetical question later posed to Dr. Gilly.

Because Dr. Gilly could not say that alcohol played no role, nor say that the refusal was not at least partially due to alcohol consumption, Licensee failed to meet his burden of proof and the trial court properly dismissed his appeal.

Accordingly, we affirm.

### ORDER

NOW, August 3, 1998, the order of the Court of Common Pleas of Northampton County, at No. 1997–C–4050, dated October 9, 1997, is affirmed.

[and the doctor agrees, prior to going to the emergency room that evening]. His feeling from the depression was that life wasn't worth living, why should I even submit to a blood test when my life doesn't matter and I'm contemplating killing myself. That was the gist of what he was thinking in his mind at the time. So, how can you make an informed decision about the test if you are thinking at the same time I am going to jump off a building or take an overdose of medication tomorrow?
Q  So do you have an opinion, to a reasonable degree of medical certainty, as to whether he had the mental capacity to make that decision?
A  My feeling is, just based on the interview in July, that he did not. The depression affected his mental capacity to make an informed decision on the test for his blood-alcohol level. By the attorney for the Commonwealth:
Q  Can you say, with a degree of reasonable medical certainty, that any incapacity that this individual had in making a knowing and conscious refusal was entirely due to his depression and not at least partially due to his alcohol consumption?

A  *No one can say that.* However, based on July, I would have to say the depression alone, in my opinion, based on my findings, would have affected his mental capacity enough to make an informed decision about a blood-alcohol test invalid. (emphasis added)
Q  Can you say that the alcohol played no role in his inability back in April, though?
A  *I can't say it played no role.* But I can tell you that in the visit in July I would not have accepted an advanced directive from that patient....I still think the depression would have, alone, affected his mental capacity. (emphasis added)
(Trial court's opinion, p. 4).

3. In reviewing a driver's license suspension case, our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether its findings of fact are supported by competent evidence. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).