# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachael D. Boseman,             :
                Appellant       :
                               :
          v.                   :    No. 746 C.D. 2016
                               :    Argued: February 7, 2017
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing        :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge


**OPINION**
**BY JUDGE SIMPSON**             **FILED: March 17, 2017**


       Rachael D. Boseman (Licensee) appeals from an order of the Court of Common Pleas of Delaware County (trial court)[1] that denied her license suspension appeal and reinstated the Department of Transportation's (DOT) one-year suspension of Licensee's operating privilege under 75 Pa. C.S. §1547(b)(1)(i) for refusing to submit to a chemical test of blood after being arrested for suspicion of driving under the influence of alcohol or controlled substance (DUI), a violation of 75 Pa. C.S. §3802. Licensee contends the trial court erred in denying her appeal where the evidence established that the arresting police officer did not provide Licensee with a meaningful opportunity to submit to a second request for a chemical blood test purportedly made at the police station. In addition, Licensee asserts the U.S. Supreme Court's holding in <u>Birchfield v. North Dakota</u>, ___ U.S.

---

[1] The Honorable Kathrynann W. Durham presided.

___, 136 S. Ct. 2160 (2016), handed down during the pendency of this appeal, applies here and requires that her license suspension appeal be sustained based on the police officer's failure to obtain a warrant to collect a blood sample. For the reasons that follow, we affirm.

## I. Background
### A. Trial Court's April 2016 Decision

In its April 2016 decision denying Licensee's license suspension appeal, the trial court found the following facts. In April 2014, Upper Providence Township Police Officer Patrick Reynolds (Arresting Officer), while conducting a traffic check using a speed timing device, noticed a black Chevrolet SUV travelling 75 miles per hour (mph) in a 55 mph zone. Arresting Officer activated his patrol car's emergency equipment and began to follow the SUV. While following, Arresting Officer observed the SUV veer to the right side of the road and abruptly stop. The abrupt stop nearly caused the officer to strike the rear of the SUV. Seeing the driver's open window, Arresting Officer used his loudspeaker to advise the driver to pull to the shoulder of the road. The SUV, however, continued north on Route 1 for about a minute before making a left turn onto Collins Drive, where it stopped.

Arresting Officer exited his vehicle and made contact with Licensee, the SUV's driver. Licensee, however, would not look at the officer, acted aggressively and used profanities when speaking to him. Licensee did provide the officer with her driver's license, registration and insurance information. When Licensee did look at the officer, he noticed her eyes were bloodshot and glassy. In

2

addition, her face was red and she slurred her speech. Arresting Officer also noticed an odor of alcoholic beverages inside the SUV.

Arresting Officer also testified that Licensee was rude and uncooperative during the stop. Licensee exited the vehicle and attempted to perform three field sobriety tests, all of which she failed. Licensee also underwent a preliminary portable breath test (PBT), which indicated the presence of alcohol.

At that point, Arresting Officer placed Licensee under arrest for suspicion of DUI. The officer then seated Licensee in the back of his patrol car and gave her an overview of the warnings concerning refusal of chemical testing in 75 Pa. C.S. §1547(b)(1), commonly referred to as the Implied Consent Law. Licensee, however, responded that she would not submit to a blood test without talking to a lawyer.

Arresting Officer then read Licensee the DL-26 form verbatim. After the officer read Licensee the DL-26 warnings, she agreed to take a blood test. However, while driving to the hospital, Licensee changed her mind and told the officer to go "f" himself and said "I'm not giving blood, something along those lines." Tr. Ct. Hr'g, 3/8/16, Notes of Testimony (N.T.), at 11; R.R. at 16a (emphasis added). Arresting Officer interpreted that as a refusal.

Arresting Officer then took Licensee to the Media Borough Police Department headquarters for processing. Upon arriving, Arresting Officer was

3

greeted by Media Police Officers Gavin and Leicht. Their department required them to create their own incident report.

Licensee refused to answer their questions and proceeded to tell the officers her life story and that she had a "multi-million dollar deal that so happened to happen that coming Monday …." N.T. at 12; R.R. at 17a. Licensee also asked the officers several questions regarding the implied consent warnings, which the officers tried to answer. The officers then handed Licensee the DL-26 form, which she read twice and signed. However, Arresting Officer testified that he did not have any intentions of offering Licensee another opportunity to submit to testing and that based upon the totality of the circumstances he deemed Licensee's conduct a refusal. To that end, Arresting Officer testified that at no time after Licensee refused to take the blood test while they were in route to the hospital did she state that she would take the test. See N.T. at 16-17; 30-32; R.R. at 21a-22a; R.R. at 35a-37a.

Media Police Officer Eric J. Gavin (Officer Gavin) also testified. He recalled that upon arrival at the Media Police station, Licensee was very angry, talked non-stop, and used a lot of expletives and obscene language. See N.T. at 48-49; R.R.at 53a-54a. When talking to Licensee, Officer Gavin noticed a heavy odor of alcohol on her breath. Officer Gavin further testified Arresting Officer handed Licensee a DL-26 form, which she signed. Officer Gavin never heard Licensee agree to take a blood test.

4

Licensee testified on her own behalf. She recalled the field sobriety tests, and that Arresting Officer asked her to submit to a blood test, but that he did not give her any warnings or read a form to her. Licensee further testified that Arresting Officer told her they were going to the hospital, and that she agreed to go there. However, Arresting Officer did not tell her why they were going to the hospital. See N.T. at 63-64; R.R. at 68a-69a.

Licensee further testified she was confused and upset at the time and asked Arresting Officer if she had a right to an attorney. Arresting Officer then stated: "So you're refusing?" and Licensee replied "refusing what? … I don't understand." See N.T. at 65-67; R.R. at 70a-72a. Arresting Officer then asked her if she did not want to go the hospital and she said no. Id.

Licensee further stated that Arresting Officer first gave her the DL-26 form at the Media Police Station and told her to read it. Licensee read and signed the DL-26 form. Licensee then texted an attorney friend and sought guidance. See N.T. at 79-80; R.R. at 84a-85a. Licensee then asked the officers to take her to the hospital. However, the officers responded: "No, it was too late." See N.T. at 68-69; R.R. at 73a-74a.

In disposing of Licensee's appeal, the trial court noted that once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of failure to submit to chemical testing. All that is required is that the officer read the warnings to the licensee, and that the licensee be given a

5

meaningful opportunity to comply with the Implied Consent Law. The question of whether a licensee refuses to submit to a chemical test is a legal one subject to plenary review on appeal. Anything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal. Further, a licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal. Also, questions of witness credibility are for the trial court. Tr. Ct., Slip Op., 4/20/16, at 9 (citations omitted).

Ultimately, the trial court rejected Licensee's argument that Arresting Officer did not have reasonable grounds to believe Licensee was driving while under the influence of alcohol. Id. at 10. The trial court further found that Arresting Officer gave Licensee the implied consent warnings and that Licensee refused to submit to chemical testing. Id.

### B. Rule 1925 Opinion in Support of Order

In a May 2016 opinion in support of its order denying Licensee's license suspension appeal, the trial court made the following determinations.

### 1. Reasonable Grounds to Request Chemical Testing

The trial court first determined that Arresting Officer had reasonable grounds to conclude Licensee was operating a motor vehicle while under the influence of alcohol. To sustain a suspension of a licensee's operating privilege under the Implied Consent Law, DOT must establish the licensee: (1) was arrested for DUI by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance;

6

(2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and, (4) was warned by the officer that her license will be suspended if she refused to submit to chemical testing. Walkden v. Dep't of Transp., Bureau of Driver Licensing, 103 A.3d 431 (Pa. Cmwlth. 2014).

Reasonable grounds exist when a person in the positon of a police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the licensee was operating the vehicle under the influence of alcohol. Id. To find the officer had reasonable grounds to conclude the licensee was operating the vehicle under the influence, the court must consider the totality of the circumstances, including such factors as: the location of the vehicle; whether the engine was running; the odor of alcohol; and, the behavior of the licensee (such as staggering, swaying, lack of cooperation). Id.

Here, as discussed above, Arresting Officer observed Licensee driving at 75 mph in a 55 mph zone. When he followed Licensee, Arresting Officer observed her veer to the right of the road and abruptly stop. Licensee then refused Arresting Officer's loudspeaker request to pull over. Rather, Licensee continued north for about a minute before stopping.

When Arresting Officer made contact with Licensee, she behaved aggressively and used profanities. Her eyes were bloodshot and glassy, and her face was red. Arresting Officer also noticed an odor of alcohol. Licensee failed the three sobriety tests, and her PBT was positive for alcohol. Given the totality of these circumstances, the trial court determined Arresting Officer had reasonable

7

grounds to conclude Licensee was operating her vehicle under the influence of alcohol. Walkden.

## 2. Consequences of Refusal

The trial court also determined Arresting Officer properly advised Licensee of the Implied Consent Law. Once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of failure to submit to chemical testing. Dep't of Transp., Bureau of Driver Licensing v. Scott, 684 A.2d 539 (Pa. 1996). All that is required is that the officer read the warnings to the licensee, and that the licensee be given a meaningful opportunity to comply with the Implied Consent Law. Sitoski v. Dep't of Transp., Bureau of Driver Licensing, 11 A.3d 12 (Pa. Cmwlth. 2010). Anything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal. Id. Further, a licensee's refusal need not be expressed in words; a licensee's conduct, such as remaining silent, may constitute a refusal. Id.

Notably, questions of witness credibility are for the trial court. Bomba v. Dep't of Transp. Bureau of Driver Licensing, 28 A.3d 946 (Pa. Cmwlth. 2011). Here, the trial court credited Arresting Officer's testimony that he informed Licensee of the consequences of refusing chemical testing. Upon arrest, Arresting Officer seated Licensee in the rear of his patrol vehicle and explained the implied consent warnings. Based upon her need to consult a lawyer, Licensee refused Arresting Officer's request for chemical testing. Arresting Officer then read the DL-26 form to Licensee verbatim. Licensee then agreed to take the test, but

8

changed her mind and again refused the testing before they reached the hospital. A reading of the DL-26 form sufficiently apprises the driver, either hearing or reading it, that if she refuses to submit to the chemical test, her operating privileges will be suspended. Quigley v. Dep't of Transp., Bureau of Driver Licensing, 965 A.2d 349 (Pa. Cmwlth. 2009). The fact that a particular motorist hearing the warning may question its interpretation is not a sufficient basis upon which to argue that the refusal was not knowing and conscious. Id. To that end, our Supreme Court recognizes that a licensee's subjective beliefs do not provide a sufficient justification for refusing to comply with the Implied Consent Law. Scott.

In short, an officer's sole duty is to inform the motorist of the implied consent warnings. Martinovic v. Dep't of Transp., Bureau of Driver Licensing, 881 A.2d 30 (Pa. Cmwlth. 2005). An officer has no duty to make sure the licensee understands the warnings regarding the inapplicability of her Miranda[2] rights against self-incrimination.

Here, the trial court determined Arresting Officer properly informed Licensee regarding the implied consent warnings. The fact that Licensee asked questions about her right to speak with an attorney prior to the test does not negate Arresting Officer's actions informing Licensee of the implied consent warnings. Martinovic. In other words, Licensee's understanding of the implied consent warnings is not determinative of whether she was properly informed of those warnings. Id.

---

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

9

### 3. Deemed Refusal

The trial court further determined that Arresting Officer had no reason to take Licensee to the hospital once she refused to take a blood test. Police officers are not required to spend time either cajoling an arrestee or waiting for her to change her mind. Grogg v. Dep't of Transp., Bureau of Driver Licensing, 79 A.3d 715 (Pa. Cmwlth. 2013). Thus, Arresting Officer had no duty to convince Licensee to take the test or wait for her to change her mind. Id.

### 4. Later Conduct Does Not Vitiate Earlier Refusal

The trial court credited Arresting Officer's testimony that he read the DL-26 form to Licensee in the patrol vehicle, and she agreed to submit to the test. However, before they arrived at the hospital, Licensee changed her mind and again refused to take the test.

Thereafter, Licensee contacted an attorney seeking guidance. Licensee then asked the officers if she could take the blood test. Arresting Officer denied her request on the ground it was too late. In determining Licensee's later request to take a blood test did not vitiate her earlier refusal, the trial court recognized that once a licensee refuses chemical testing, the refusal cannot be vitiated by a later assent. Vora v. Dep't of Transp., Bureau of Driver Licensing, 79 A.3d 743 (Pa. Cmwlth. 2013).

### 5. Licensee Refused Chemical Testing

In conclusion, the trial court determined the evidence established that Licensee refused to undergo chemical testing after being advised of the

requirements of the Implied Consent Law.  On the way to the hospital after being read the DL-26 form, Licensee stated she would not submit to the blood test.

## 6. <u>Birchfield v. North Dakota</u>

In June 2016, following the trial court's final order in this case, the U.S Supreme Court handed down its decision in <u>Birchfield</u>.  The States of North Dakota and Minnesota impose criminal penalties on motorists who refuse to submit to a blood test following an arrest for DUI.  In <u>Birchfield</u>, the Court employed a multi-factor balancing test in weighing the differences between breath and blood tests; the Court concluded that blood tests are much more intrusive, under a Fourth Amendment analysis, than breath tests.  Ultimately, the Court reasoned that the well-established *search incident to arrest* exception to the Fourth Amendment's warrant requirement does not permit warrantless blood tests absent consent or exigent circumstances.  "There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads."  <u>Birchfield</u>, ___ U.S. at ___, 136 S. Ct. at 2185.  However, <u>Birchfield</u> does not prohibit warrantless, but less intrusive, requests for *breath tests incident to arrest for DUI*.  The Court noted that current breath tests are nearly as reliable as blood tests, thereby lessening the need for the more intrusive blood tests.

*Most importantly here*, the <u>Birchfield</u> Majority recognized the Court's prior opinions "<u>have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.  Petitioners do not question the constitutionality of those</u>

11

laws, and nothing we say here should be read to cast doubt on them." Id. (emphasis added).

## II. Issues

Licensee presents two primary issues. First, Licensee contends the trial court erred in denying her license suspension appeal where the evidence established that Arresting Officer did not provide Licensee with a meaningful opportunity to comply with a second request to submit to the chemical test purportedly offered at the police station. Second, Licensee asserts the U.S. Supreme Court's holding in Birchfield, decided during the pendency of this appeal, should be applied to her appeal. Licensee argues Birchfield requires that her appeal be sustained based on the police officer's failure to obtain a warrant to collect a blood sample from her.

## III. Discussion

### A. Implied Consent Law

Section 1547 of the Vehicle Code relevantly provides (with emphasis added):

> **(a) General Rule.**—Any person who drives, operates, or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating, or in actual physical control of the movement of a vehicle:
>
> (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or

12

revoked), <u>3802 (relating to driving under the influence of alcohol or a controlled substance)</u> ….

* * * *

**(b) Suspension for refusal.—**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

* * * *

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, <u>upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties)</u>.

75 Pa. C.S. §1547(a),(b).

## B. Meaningful Opportunity

### 1. Argument

Licensee first contends that she initially agreed to be transported to a hospital for a blood test after Arresting Officer read her the DL-26 form in the

patrol vehicle. However, while in route to the hospital, Arresting Officer diverted to the Media Police station instead.

Licensee further asserts that at the police station, Arresting Officer provided her with an additional opportunity to submit to a blood test. To that end, Licensee points out Arresting Officer testified that he noted in his incident report that "Licensee still refused a blood test however." N.T. at 30-32; R.R. at 35a-37a (emphasis added). Licensee contends this notation indicated that the officers offered her another opportunity to submit to a blood test and that she still refused. Otherwise, the notation that Licensee **still** refused a blood test would not have been necessary.

Therefore, Licensee argues the trial court misunderstood what happened in determining Licensee attempted to vitiate her earlier refusal by a later request that she be permitted to take a blood test. Rather, Licensee asserts, the police officers vitiated her earlier refusal by renewing or offering a new opportunity to submit to chemical testing. To that end, Licensee points out Arresting Officer testified that it would be within the officer's discretion to again offer her an opportunity to take a blood test. N.T at 44; R.R. at 49a.

In support of her position, Licensee cites Marmo v. Department of Transportation, 543 A.2d 236 (Pa. Cmwlth. 1988) (abrogation recognized in Olbrish v. Department of Transportation, Bureau of Driver Licensing, 619 A.2d 397 (Pa. Cmwlth. 1992)), where this Court stated in *dicta* that where a police officer gratuitously offers a licensee a second opportunity, after a prior refusal, to

14

take one of the chemical tests in 75 Pa. C.S. §1547(a), the prior refusal is waived. Licensee recognizes that in <u>Olbrish</u> this Court declined to apply the waiver language in <u>Marmo</u>. However, she requests that we reconsider the waiver language here where the police officers provided her another opportunity to review the DL-26 warnings. To that end, Licensee observes, in <u>Olbrish</u> we stated in a footnote that a waiver of the first refusal may occur where there is a refusal and the police then offers a second test, *which the licensee successfully completes*. <u>See</u> <u>id.</u> at 399 n.3. Although Licensee did not successfully complete the test here, she argues she was denied a meaningful opportunity to do so.

## 2. Analysis

To begin our analysis, we note that is not the province of this Court on appellate review to make new or different findings of fact. <u>Reinhart v. Dep't of Transp., Bureau of Driver Licensing</u>, 954 A.2d 761 (Pa. Cmwlth. 2008). Rather, we may only review the trial court's findings to determine if they are supported by substantial competent evidence. <u>Id.</u> If the trial court's findings are supported by the evidence, we are precluded from disturbing them. <u>Id.</u> In addition, we must view the evidence in a light most favorable to the party that prevailed before the trial court. <u>Id.</u>

We also recognize that determinations as to witness credibility and the weight assigned to the evidence are matters solely within the province of the trial court as fact-finder. <u>Id.</u> The trial court may accept or reject the testimony of any witness, either in whole or in part. <u>Id.</u>

15

Here, the trial court credited Arresting Officer's testimony and did not find that Arresting Officer offered Licensee a second opportunity to submit to a blood test after her initial refusal in the patrol vehicle. As discussed above, after Licensee failed the sobriety tests and the PBT, Arresting Officer placed Licensee under arrest for suspicion of DUI and gave her an overview of the implied consent warnings. Tr. Ct., Slip Op., 4/19/16, F.F. Nos. 17-21; N.T. at 7-9; R.R. at 12a-14a. Arresting Officer then read the DL-26 form to Licensee verbatim. F.F. No. 22; N.T. at 10-11; R.R. at 15a-16a. Licensee agreed to take the blood test. F.F. No. 23; N.T. at 10-11; R.R. at 15a-16a. A few minutes later, however, Licensee changed her mind and stated she would not submit to a blood test. F.F. No. 24; N.T. at 11, 26-29, 39-40; R.R. at 16a, 31a-35a, 44a-45a. At that point, Arresting Officer considered Licensee's actions a refusal. F.F. No. 25; N.T. at 11, 16, 29-30; R.R. at 16a, 21a, 34a-35a.

Notably, Arresting Officer testified that even at the Media Police station, Licensee never said she would take the blood test after her refusal in the patrol vehicle. F.F. No. 30; N.T. at 30-32; R.R. at 35a-37a. Officer Gavin also testified that he never heard Licensee agree to take a blood test. F.F. No. 42; N.T. at 59; R.R. at 64a.

In sum, the trial court found that Arresting Officer read Licensee the DL-26 form in the back of the patrol vehicle after placing her under arrest for DUI. After initially consenting to take the blood test, Licensee changed her mind and refused before they arrived at the hospital. Clearly, Arresting Officer afforded Licensee a meaningful opportunity to take the blood test. Walkden.

16

Arresting Officer testified he deemed Licensee's conduct in the patrol vehicle as a refusal. Therefore, Arresting Officer also stated that Licensee never had another opportunity to submit to a blood test after her initial refusal. Consequently, we reject Licensee's request to essentially make findings of fact different from those of the trial court and find that Arresting Officer offered Licensee another opportunity to take the blood test. Unmistakably, the credible evidence shows he did not.

## C. Applicability of <u>Birchfield</u>

### 1. Argument

Licensee also contends the U.S. Supreme Court's holding in <u>Birchfield</u>, decided during the pendency of this appeal, should be applied to her appeal. She argues <u>Birchfield</u> requires that her appeal be sustained based on the police officer's failure to obtain a warrant to collect a blood sample.

Licensee points out that the Fourth Amendment to the U.S. Constitution, and Article I, Section 8 of the Pennsylvania Constitution, guarantee Pennsylvanians the right to be secure in their persons from unreasonable searches and seizures. Essentially, Licensee contends that the U.S. Supreme Court's recent decision in <u>Birchfield</u> renders Pennsylvania's Implied Consent Law, 75 Pa. C.S. §1547(b), facially unconstitutional under the Fourth Amendment.

Licensee acknowledges that Pennsylvania, unlike North Dakota or Minnesota, does not have a separate criminal refusal statute. However, Licensee asserts 75 Pa. C.S. §1547(b), permits the Commonwealth to impose criminal

penalties, such as mandatory sentence enhancement and increased fines, on a person who refuses to undergo a chemical test. These civil and criminal penalties, set forth in the DL-26 form, apply to individuals arrested for DUI. 75 Pa. C.S. §1547(b)(2). In light of the enhanced criminal penalties, Licensee asserts that when a Pennsylvania police officer arrests a motorist for DUI, the officer must procure a search warrant for a blood test unless exigent circumstances exist. Birchfield.

Here, Licensee argues, no such exigent circumstances exist. The rate at which alcohol metabolizes in the blood is no longer sufficient to provide police officers with an exigent circumstance. Missouri v. McNeely, ___ U.S. ___, 133 S.Ct. 1552 (2013). Consequently, Licensee contends her refusal to submit to a chemical test of blood, after being advised of the enhanced criminal penalties, cannot stand under Birchfield.

Finally, Licensee acknowledges she did not raise a constitutional issue before the trial court. However, as noted, the trial court's opinion pre-dated the Supreme Court's decision in Birchfield. Licensee asserts the general rule followed in Pennsylvania is that the courts apply the law in effect at the time of the appellate decision. Blackwell v. State Ethics Comm'n, 589 A.2d 1094 (Pa. 1991) (citing Commonwealth v. Cabeza, 469 A.2d 146 (Pa. 1983)). "This principle applies with equal force to both civil and criminal cases." Blackwell, 589 A.2d at 1099. This means we observe the principle that a party whose case is pending on direct appeal is entitled to the changes in the law which occur before final judgment. Id.

18

In response, DOT contends Birchfield is distinguishable because it is not a crime to refuse chemical testing under Pennsylvania's Implied Consent Law. Further, before the enhanced criminal penalties may be imposed, the licensee or motorist must be found guilty beyond a reasonable doubt of DUI. Here, Licensee was not convicted of the DUI charge. In Commonwealth v. Carley, 141 A.3d 1287 (Pa. Super. 2016), the Superior Court, citing Apprendi v. New Jersey, 530 U.S. 466 (2000), recognized that any fact that increases the maximum penalty for DUI, except a prior conviction, requires proof beyond a reasonable doubt. Anything less would violate due process. Id.

However, a license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding. Bashore v. Dep't of Transp., Bureau of Driver Licensing, 27 A.3d 272 (Pa. Cmwlth. 2011). Accordingly, the lawfulness of a Pennsylvania DUI arrest is irrelevant to a determination of whether the licensee's operating privileges were properly suspended under the civil Implied Consent Law. In addition, the U.S. Supreme Court held in Pennsylvania Board of Probation and Parole v. Scott, 524 U.S. 357 (1998), that evidence obtained illegally in a search did not have to be excluded in an administrative proceeding. As such, the U.S. Supreme Court has not extended the federal exclusionary rule to proceedings other than criminal trials. Id.

## 2. Analysis

To begin, we emphasize that a license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding from a

19

criminal DUI proceeding arising out of the same incident. <u>Bashore</u>. It is not a crime to refuse chemical testing under Pennsylvania's Implied Consent Law.

In the present case, the DL-26 form read and signed by Licensee included the following warnings:

> 3. If you refuse to submit to the [blood] test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of [DUI], you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, <u>and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code</u>, then because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail** and a minimum fine of $1,000, up to a maximum of five years in jail and a maximum fine of $10,000.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. <u>If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test</u>.

Commonwealth Ex. C-1; R.R. at 113a (emphasis by underline added).

Clearly, the DL-26 form advised Licensee that *if she was convicted of DUI*, she would be subject to enhanced civil and criminal penalties because of her refusal. The DL-26 form did not advise Licensee that it is a crime to refuse to

20

submit to chemical testing.  By its own language, Birchfield does not apply to implied consent laws that merely impose civil penalties.  To that end, the Court stated: "Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them."  Birchfield, ___ U.S. at ___, 136 S.Ct. at 2185 (emphasis added).

Rather, Birchfield involved three licensees.  Birchfield, the first licensee, was *criminally prosecuted* in North Dakota for refusing a warrantless blood test. The U.S. Supreme Court reversed his conviction, noting that Birchfield was threatened with an unlawful search, and that the State failed to present any evidence of exigent circumstances justifying a warrantless request for a blood test.

Bernard, the second licensee, was criminally prosecuted for refusing a warrantless breath test in Minnesota.  The Birchfield Court upheld that conviction, noting the Fourth Amendment does not require officers to obtain a warrant prior to requesting a breath test.

Beylund, the third licensee, submitted to a blood test, which yielded a blood alcohol content of 0.250%.  As a result, Beylund's license was suspended for two years.  On appeal, the North Dakota Supreme Court rejected Beylund's argument that his consent was coerced by the officer's warning that a refusal to consent to a blood test, *itself*, would be a crime.  The Birchfield Court reversed, noting the State could not constitutionally compel a blood test given the Fourth Amendment.  As a result, the Supreme Court remanded for a determination in accord with Schneckloth v. Bustamonte, 412 U.S. 218 (1973), as to whether, under

the totality of the circumstances, Beylund voluntarily consented to the blood test or whether that evidence should be suppressed.

Unlike Birchfield, the present case involves a civil license suspension appeal, not a criminal proceeding. To that end, we recognize the parties indicated at oral argument that Licensee was not convicted of the DUI charge.

As discussed above, Birchfield addressed the constitutionality of a State statute that made it a *crime* to refuse a warrantless blood test after being arrested for DUI. In short, although Birchfield may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law. Consequently, Licensee's Fourth Amendment challenge to the Implied Consent Law fails. Birchfield.

## IV. Conclusion

For the above reasons, we discern no error or abuse of discretion in the trial court's order denying Licensee's license suspension appeal. Accordingly, we affirm. Therefore, we grant DOT's request to reinstate its one-year suspension of Licensee's operating privilege pursuant to 75 Pa. C.S. §1547(b)(1)(i) within a reasonable time.[3]

_____
ROBERT SIMPSON, Judge

_____

[3] We note the trial court granted Licensee's *unopposed* motion for a supersedeas pending the outcome of her appeal to this Court.

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachael D. Boseman,            :
                 Appellant      :
                               :
              v.                   :    No. 746 C.D. 2016
                               :
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing        :

## **O R D E R**

       **AND NOW**, this 17th day of March, 2017, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Delaware County is **AFFIRMED**. Further, the Department of Transportation, Bureau of Driver Licensing, is hereby directed to **REINSTATE** the one-year suspension of Appellant Boseman's operating privilege within a reasonable time.

 

                              _____
                              ROBERT SIMPSON, Judge