# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia Diveglia,             :
           Appellant        :
                                 :
           v.                 :   No. 1821 C.D. 2016
                                 :   SUBMITTED: April 21, 2017
Commonwealth of Pennsylvania,     :
Department of Transportation,       :
Bureau of Driver Licensing         :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE HEARTHWAY                 FILED: August 22, 2017

Cynthia Diveglia (Licensee) appeals from the October 4, 2016 order of the Court of Common Pleas of Adams County (trial court) that dismissed Licensee's appeal from the operating privilege suspension imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) for Licensee's refusal to submit to chemical testing after her arrest for violating section 3802 of the Vehicle Code.[1] We affirm.

---

[1] 75 Pa. C.S. § 3802. Section 3802 of the Vehicle Code relates to driving under the influence (DUI) of alcohol or a controlled substance.

On December 2, 2014, DOT suspended Licensee's operating privilege, effective January 6, 2015, for one year for her refusal to submit to chemical testing on November 16, 2014, in violation of section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1), commonly referred to as the Implied Consent Law. Licensee appealed, and the trial court ultimately held a hearing on September 8, 2016.

At the hearing, DOT submitted exhibits and presented the testimony of Pennsylvania State Trooper Isaac Carlson White. Trooper White testified that on November 16, 2014, he was dispatched to locate a vehicle that was allegedly travelling erratically on North Brown's Dam Road. Trooper White located the vehicle and the individual who reported the erratic driving, who confirmed the suspect vehicle. Trooper White followed the vehicle and observed that it turned around at a dead-end, that it had a flat front passenger side tire and front right fender damage, and that it continuously swerved into the opposite lane of travel.

Trooper White followed the vehicle without using his emergency lights or siren. When Trooper White observed the vehicle travel over a blind ridge in the opposite lane of travel, he activated his emergency lights. Licensee ignored the lights and continued to drive, making a right turn, stopping momentarily, then abruptly accelerating and turning left onto State Route (SR) 94. Trooper White then activated his siren and requested assistance.

Police from the Eastern Adams Regional Police Department (Police) responded. The Police deployed a stop strip on SR 94, which Licensee drove

2

around and moved back into the lane of travel. Licensee then turned left onto SR 30 East and Trooper White and the Police pursued her. Licensee continued to weave in and out of lanes and Trooper White pursued her for about 10 minutes, during which time Licensee's front bumper became detached and dragged along the ground. Licensee then turned the vehicle onto SR 194 North and Trooper White and two of the Police officers used their vehicles to perform a rolling road block, ultimately stopping Licensee's vehicle.

Trooper White and the Police approached the vehicle with their weapons drawn. Trooper White opened Licensee's driver's door and holstered his weapon. Trooper White noticed a pronounced smell of alcohol and Licensee holding onto the steering wheel, staring straight ahead, and not responding. Trooper White instructed Licensee to unbuckle her seatbelt, which she ultimately did, and he helped her out of the vehicle and handcuffed her. Trooper White tried to speak with Licensee but she just mumbled words that he could not understand. He asked her why she tried to run from the police and she said "what police." He asked her if she saw the red and blue lights and the siren and she said "what lights." Trooper White again noticed a pronounced smell of alcohol coming from Licensee's breath and person.

Trooper White then removed Licensee's handcuffs to perform field sobriety tests, which Licensee acknowledged she understood; however, Licensee was unable to complete the tests and Trooper White had to stop them due to his concern for Licensee's safety. Trooper White observed that Licensee had glassy, bloodshot eyes and slurred her words when she tried to talk. Trooper White

3

testified that he was aware that Licensee claimed she suffered from a medical condition; however he did not observe any physical injuries nor did he believe that her condition would interfere with her ability to perform the field sobriety testing. Licensee admitted to drinking wine and told Trooper White that she was coming from a party.

Trooper White believed Licensee was highly intoxicated, placed her under arrest for DUI, and transported her to the Gettysburg Hospital for a blood draw. During transport, Licensee informed Trooper White that she was an attorney and requested to contact her husband, who was also an attorney. Trooper White advised Licensee that she did not have the right to consult an attorney prior to the blood draw. Once at the hospital, Trooper White read Licensee the implied consent warnings and explained them to her. Trooper White then repeated the substance of the form at least three more times to Licensee. Licensee indicated that she understood the warning and had no questions. When asked to submit to the test, Licensee was belligerent, repeatedly requested to speak to her husband, and refused to submit to the test. Trooper White, after allowing Licensee sufficient time to reconsider, determined that Licensee had refused the test. Trooper White informed Licensee of such, and transported her to the state police barracks.

After Trooper White's testimony, Licensee moved for a nonsuit based upon *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016) (finding that a warrant is necessary for a blood draw), which the trial court denied. Thereafter, Licensee testified on her own behalf. Licensee stated that she drank a small glass of wine at the Longhorn Steakhouse because she did not have enough money to purchase a

4

bottle, and then left for home. Licensee stated that she thought she had a flat tire, so she attempted to pull off the road and, in doing so, hit the curb with the right front part of her vehicle. This frightened her and she began to panic. Licensee stated that she did not pull over for the policemen because she did not know who was following her and feared a physical assault. Licensee stated that she was unaware that the police were following her until Trooper White opened her door at gunpoint.

Licensee also presented the video deposition testimony of David Ross, M.D., a neuropsychiatrist. Dr. Ross opined that Licensee was unable to recognize that police were pursuing her because of the cumulative effect of a brain injury that she had previously suffered, post-traumatic stress disorder, and the cumulative factors of the stress of the events on the evening at issue. Dr. Ross further opined that because of her mental state, Licensee was unable to make a knowing and conscious refusal to submit to the chemical testing. Dr. Ross concluded that Licensee's failure to recognize the pursuing police and her inability to knowingly consent were not affected by her consumption of one glass of wine on the night in question.

The trial court found Licensee's testimony to be contradictory to her description of events to Dr. Ross. The trial court found Dr. Ross's conclusions unpersuasive because they were based upon information supplied by Licensee, which the trial court found inaccurate based upon the record. The trial court found Trooper White's testimony credible that Licensee was highly intoxicated on the night in question. Further, the trial court found that Licensee's state and her

5

dangerous driving were supported by her statement to Trooper White on the night in question that she was coming from a party where she had been drinking wine.

The trial court found that Licensee failed to rebut DOT's evidence of a conscious and knowing refusal of testing. On October 4, 2016, the trial court dismissed Licensee's appeal and reinstated her license suspension. Licensee now appeals to this Court.[2]

Initially, Licensee contends that the United States Supreme Court's holding in *Birchfield*, which was decided during the pendency of this appeal, requires the appeal be sustained under the Federal and State Constitutions for Trooper White's failure to obtain a search warrant to collect a blood sample.

This Court addressed this issue in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017). In that case, we distinguished *Birchfield* because it involved criminal sanctions for refusing to submit to chemical testing, while *Boseman* involved a civil license suspension. *Boseman*, 157 A.3d at 21. We determined that "[b]y its own language,[3] *Birchfield* does not apply to implied consent laws that merely impose civil penalties." *Boseman,* 157 A.3d at 21.

---

[2] Our scope of review is limited to determining whether the trial court's decision is supported by substantial evidence, whether an error of law occurred, or whether the decision indicates a manifest abuse of discretion. *Stahr v. Department of Transportation, Bureau of Driver Licensing*, 969 A.2d 37, 39 n.2 (Pa. Cmwlth. 2009).

[3] "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to **(Footnote continued on next page…)**

6

. . . *Birchfield* is distinguishable because it is not a crime to refuse chemical testing under Pennsylvania's Implied Consent Law. Further, before the enhanced criminal penalties may be imposed, the licensee or motorist must be found guilty beyond a reasonable doubt of DUI. Here, Licensee was not convicted of the DUI charge. . .

However, a license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding. . . Accordingly, the lawfulness of a Pennsylvania DUI arrest is irrelevant to a determination of whether the licensee's operating privileges were properly suspended under the civil Implied Consent Law. In addition, the U.S. Supreme Court held *in Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357 (1988), that evidence obtained illegally in a search did not have to be excluded in an administrative proceeding. As such, the U.S. Supreme Court has not extended the federal exclusionary rule to proceedings other than criminal trials. *Id.*

. . . *Birchfield* addressed the constitutionality of a State statute that made it a *crime* to refuse a warrantless blood test after being arrested for DUI. In short, although *Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on a refusal of a blood test are imposed, such is not the case before us in this civil license suspension under the Implied Consent Law.

*Boseman,* 157 A.3d at 19-22.

---

**(continued…)**

comply. . . Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." *Birchfield*, 136 S.Ct. at 2185 (citation omitted).

Driving in Pennsylvania is a privilege, not a right. *Krall v. Department of Transportation, Bureau of Driver Licensing*, 682 A.2d 63 (Pa. Cmwlth. 1996). In exchange for that privilege, motorists agree that their consent to chemical testing will be implied following a lawful arrest for DUI. Section 1547(a) of the Vehicle Code, 75 Pa.C.S. § 1547(a). The possibility of civil consequences resulting from a motorist's refusal to submit to a blood test after a lawful arrest for DUI does not offend the Fourth Amendment. *See Birchfield.* Accordingly, Licensee's constitutional argument fails.

Next, Licensee contends that the trial court erred in finding that Licensee failed to rebut DOT's evidence of a conscious and knowing refusal of testing. In order to suspend a licensee's operating privilege for refusing to submit to chemical testing, DOT must establish that the licensee:

> 1) was arrested for driving while under the influence of alcohol; 2) was asked to submit to a chemical test; 3) refused to do so; and 4) was specifically warned by the police officer that a refusal would result in a revocation of his driver's license. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Once [DOT] satisfies its burden of proof, the burden then shifts to the licensee to prove that [her] refusal was not knowing and conscious and that such inability was not caused, in whole or in part, by [her] consumption of alcohol. *Gombar v. Department of Transportation, Bureau of Driver Licensing*, 678 A.2d 843 (Pa. Cmwlth. 1996).

*Hinkel v. Department of Transportation, Bureau of Driver Licensing*, 715 A.2d 556, 558 (Pa. Cmwlth. 1998).

8

Here, DOT established that Licensee was arrested for driving under the influence of alcohol, was asked to but refused to submit to chemical testing, and had received the proper warnings. The burden then shifted to Licensee to prove that her refusal was not knowing and conscious and was not caused in whole or in part by her consumption of alcohol.

Whether the licensee was able to make a knowing and conscious refusal is factual determination that the trial court must make. *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 340 (Pa. Cmwlth. 2010). This Court must affirm the trial court's factual findings if they are supported by sufficient evidence of record. *Id.*

Licensee argues that Dr. Ross's testimony was sufficient to establish that her refusal was not knowing and conscious. However, for Licensee to rebut DOT's case with medical evidence, her "medical expert must rule out alcohol as a contributing factor to the licensee's inability to offer a knowing and conscious refusal in order to satisfy the licensee's burden." *Id.* "[I]f the [licensee's] inability to make a knowing and conscious refusal of testing is caused in whole or in part by consumption of alcohol, the licensee is precluded from meeting her burden as a matter of law." *Id.*

The trial court, however, determined that Dr. Ross's testimony was not persuasive because it was based upon incorrect information provided by Licensee (specifically, that she only consumed a single glass of wine) and was therefore insufficient to establish that Licensee's refusal was not knowing and

9

conscious. Licensee informed Dr. Ross that she had only one small glass of wine at a restaurant. However, Trooper White, who the trial court found credible, determined that Licensee was highly intoxicated due to her actions, her slurred speech, her reeking of alcohol, and her admission to Trooper White that she was at a party and drinking wine. (*See* Trial Ct. Op., at 7-8.) Thus, Trooper White's testimony supports the trial court's determinations. The trial court did not err in determining that Licensee failed to rebut DOT's evidence.

Accordingly, we affirm the trial court's order.

_____
JULIA K. HEARTHWAY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia Diveglia,             :
         Appellant     :
                      :
        v.         :  No. 1821 C.D. 2016
                      :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :

O R D E R

AND NOW, this 22nd day of August, 2017, the order of the Adams County Court of Common Pleas in the above-captioned matter is affirmed.

_____
JULIA K. HEARTHWAY, Judge