# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin R. Collons, : 
          Appellant : 
 : 
v. : No. 1186 C.D. 2018
 : Argued: June 6, 2019
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge (P.)
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                    FILED:  July 2, 2019

Kevin R. Collons (Licensee) appeals from the July 26, 2018 Order of the Court of Common Pleas of Chester County (common pleas) dismissing his appeal from a one-year suspension of his operating privileges imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1]  Licensee

---

[1] Section 1547(b)(1) reads, in pertinent part, as follows:

(1) If any person placed under arrest for violation of section 3802 [(relating to driving under the influence of alcohol or controlled substance)] is

**(Footnote continued on next page…)**

presents one issue on appeal: that his operating privilege suspension should be overturned because the police officer that requested he submit to a chemical test of his blood advised Licensee that he had no right to speak to an attorney, upon his request to do so, before deciding whether to submit to said test. Licensee admits the status of the law in Pennsylvania is that a motorist does not have the right to consult an attorney before deciding whether to submit to a chemical test, but argues this should be reexamined in light of the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (U.S. 2016). In *Birchfield,* the Court concluded that the Fourth Amendment[2] permits warrantless breath tests incident to arrest for drunk driving, but not blood tests, which are significantly more intrusive than breath tests. *Id.* at 2184. The Court further held that a state cannot, by implied consent, justify a warrantless blood draw where refusal will subject an individual to criminal penalties. *Id*. at 2185-86.

On May 31, 2017, Licensee was arrested for driving under the influence (DUI). Immediately after the arrest, Licensee was asked to submit to a chemical

---

**(continued…)**

requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

[2] The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

test of his blood, to which he responded with a question. Licensee was then read the warnings in DOT Form DL-26, "Chemical Testing and Warnings and Report of Refusal to Submit to Chemical Testing as Authorized by Section 1547 of the Vehicle Code in Violation of Section 3802," after which he requested to speak with his attorney. Warning number four, which states that Licensee does not have the right to speak to an attorney before deciding whether to submit to a blood test, was reread three times and each time Licensee responded by requesting to speak to his attorney. The arresting officers deemed this request a refusal. DOT, by letter dated June 20, 2017, notified Licensee that his operating privileges were suspended for a period of one year (Suspension) as a result of his refusal to submit to a chemical test on May 31, 2017, pursuant to Section 1547(b)(1)(i) of the Vehicle Code. Licensee then appealed the Suspension to common pleas, which conducted a hearing on May 17, 2018.

At the hearing, Borough of Phoenixville Officer Sean Knapp and Corporal Steven MacDonald, Officer Knapp's partner, testified. Officer Knapp testified that on May 31, 2017, he was driving on Nutt Road in Chester County when he observed a vehicle driven by Licensee swerving and overcorrecting on the road. Based on these observations, Officer Knapp conducted a traffic stop of Licensee. Upon making initial contact with Licensee, Officer Knapp observed that Licensee's eyes were glassy, that his speech was slurred, and that he had an odor of alcohol. Officer Knapp then had Licensee exit the vehicle to perform field sobriety tests. Corporal MacDonald testified that he had Licensee perform several field sobriety tests and that Licensee failed these tests. Thereafter, Corporal MacDonald conducted a portable breath test, which concluded Licensee had a blood alcohol

level of 0.21 percent. At that point, the officers concluded that Licensee was not capable of safe driving and placed him under arrest for DUI.

After placing Licensee under arrest, Corporal MacDonald asked Licensee if he would be willing to consent to a blood draw to test his blood alcohol level. Licensee asked a question in response to the request. Corporal MacDonald then retrieved Form DL-26 from his vehicle and read Licensee the warnings contained in Form DL-26 verbatim. The warnings in Form DL-26 read, in pertinent part, as follows:

1.  You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
2.  I am requesting that you submit to a chemical test of blood . . . .
3.  If you refuse to submit to the [blood] test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months . . . .
4.  You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to [a blood] test[], you will have refused the test.

(Reproduced Record (R.R.) at 59a-60a.) After being read the forgoing warnings, Licensee requested to speak to his attorney. In response, Corporal MacDonald reread warning number four, after which Licensee again requested to speak to his attorney. Corporal MacDonald read warning number four twice more and each

4

time Licensee requested to speak to his attorney.  At that point, the officers treated Licensee's request to speak to an attorney as a refusal to submit to a blood test.[3]

Licensee's counsel argued to common pleas that because there is a potential effect on criminal liability from refusing to take a chemical test, advising an arrested licensee that he has no right to speak to counsel, and considering a request to speak to counsel a refusal, is not consistent with *Birchfield.*  After receiving briefs from counsel on this issue common pleas, by Order dated July 26, 2018, denied and dismissed Licensee's appeal from the Suspension.  (Common pleas' Order.)  Common pleas credited the testimony of the officers and concluded that DOT met its burden to impose the Suspension.  (*Id.* at 3-4)  As to Licensee's argument based upon *Birchfield*, common pleas concluded "*Birchfield* does not apply in civil license suspension appeals under the Implied Consent Law." (Common pleas' Order at 4.)

On appeal,[4] Licensee argues that in light of *Birchfield*, we should reexamine our jurisprudence regarding whether a motorist has a right to consult an attorney before deciding whether to submit to a chemical test.  DOT responds by arguing that it is settled law that a motorist does not have the right to consult an attorney before deciding whether to submit to a chemical test, and that *Birchfield* does not alter this well settled conclusion.

---

[3] We have previously held that a refusal to submit to a chemical test "is anything substantially less than an unqualified, unequivocal assent . . . ."  *Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011) (quoting *Dep't of Transp., Bureau of Traffic Safety v. Mumma*, 486 A.2d 891, 892 (Pa. Cmwlth. 1983)).

[4] This matter presents solely a question of law, as such our scope of review is plenary. *Whitaker v. Wetzel*, 170 A.3d 568, 572 n.3 (Pa. Cmwlth. 2017).

Before addressing Licensee's arguments, we first briefly outline the current state of the law in Pennsylvania. As do other states, Pennsylvania's Motor Vehicle Code provides that "[a]ny person who drives . . . a vehicle . . . shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood . . . ." 75 Pa. C.S. § 1547(a). This "implied consent" provision also grants licensees the right to refuse such testing. *Commonwealth v. Myers*, 164 A.3d 1162, 1164 (Pa. 2017). Refusal "comes with its own set of consequences." *Id.* Section 1547 of the Vehicle Code sets forth the civil penalties for refusing to take chemical tests, which include mandatory suspension of operating privileges (drivers' licenses), *see* 75 Pa. C.S. § 1547(b), and provides that a licensee's refusal to submit to chemical testing is admissible in evidence in criminal proceedings, *see* 75 Pa. C.S. § 1547(e). Police officers who request a chemical test are required by statute and precedent to inform a licensee, who has been arrested on suspicion of driving under the influence, of the consequences of refusal. *See* 75 Pa. C.S. § 1547(b)(2); *Dep't of Transp., Bureau of Driver Licensing v. O'Connell*, 555 A.2d 873, 878 (Pa. 1989). In *O'Connell,* the Supreme Court specified that:

> where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does **not** have the right to consult with an attorney or anyone else prior to taking the test.

*Id.* at 878 (emphasis added). The Court explained that a licensee "is entitled to this information so that his choice to take a breathalyzer test can be knowing and

6

conscious and we believe that requiring the police to qualify the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test." *Id*. This clarification was necessary because "the course of conduct of the police[,]" in giving *Miranda*[5] warnings when arresting the licensees, created the arrestees' confusion over their *Miranda* rights. *Id*. *O'Connell* has been applied to requests for all chemical tests including blood. *Dep't of Transp., Bureau of Driver Licensing v. Ingram*, 648 A.2d 285, 294-95 (Pa. 1994).

As a result of this decision, the "*O'Connell*" warning is included in Form DL-26. We have held that reading Form DL-26 to a motorist "is sufficient as a matter of law to meet the warning requirement under Vehicle Code Section 1547(b) . . . ." *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 354 (Pa. Cmwlth. 2009).

Implied consent provisions in states' motor vehicle codes were recently addressed in *Birchfield*, a United States Supreme Court opinion. At issue was whether the search incident to arrest and consent exceptions to the Fourth Amendment's warrant requirement allowed for warrantless breath and blood tests when the refusal subjected the licensee to criminal penalties. Weighing the privacy rights of individual motorists against the governmental interest of ensuring safety on the roadways, the Court concluded that the search incident to arrest exception to the warrant requirement allowed police to administer breath tests. *Id.* at 2177-78. The Court found the impact of breath tests on privacy interests is slight compared to the need of the government to conduct alcohol testing to ensure safety on the public roadways. *Id.* at 2184. However, the Court concluded that blood tests are highly intrusive and that, in light of the availability of less intrusive breath tests,

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

warrantless blood tests could not be justified, absent consent or exigent circumstances. *Id.* The Court next examined whether implied consent laws can be found to provide the necessary consent, and determined "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a **criminal** offense." *Id.* at 2186 (emphasis added). Important to the present matter, the Court noted that:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

*Id.* at 2185 (citations omitted).

This Court has subsequently examined the impact of *Birchfield* on the civil penalty of license suspension under our Implied Consent Law. In *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), after the licensee refused to submit to a chemical test of her blood, the licensee's operating privileges were suspended pursuant to the Implied Consent Law. Citing *Birchfield*, licensee argued her suspension should be overturned based on the police officer's failure to obtain a warrant to collect a blood sample. We denied licensee's appeal, concluding "*Birchfield* does not apply to implied consent laws that merely impose civil penalties." *Boseman*, 157 A.3d at 21. Additionally, we noted that "although *Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law." *Id.*

8

Although not cited by Licensee, the Pennsylvania Supreme Court has discussed implied consent after *Birchfield* where police officers read the Form DL-26 warnings to a licensee who had been rendered unconscious by medicine administered at a medical center after his arrest for DUI. *Myers*, 164 A.3d at 1162. When licensee did not respond, officers instructed a nurse to draw the licensee's blood without first obtaining a warrant. When the test results were offered into evidence at a **criminal** trial, the licensee argued they should be excluded, citing *Birchfield*, because he could not have consented in his unconscious state and, therefore, a warrant was required to perform a blood test. The Court agreed, concluding that the Implied Consent Law "is not an *ipso facto* authorization to conduct a chemical test." *Myers*, 164 A.3d at 1176. Thus, "despite the existence of an implied consent provision, an individual must give his actual and voluntary consent at the time the blood test is requested." *Marchese v. Dep't of Trans., Bureau of Driver Licensing*, 169 A.3d 733, 739 (Pa. Cmwlth. 2017).

We now address Licensee's arguments to this Court, which are contained in five pages of his brief. Licensee contends that *Birchfield* "calls into question why a motorist's right to counsel under the Sixth Amendment to the U.S. Constitution should not be applicable in cases such as this one where a request for a blood draw implicates Fourth Amendment protection." (Licensee's Brief (Br.) at 7.) Citing Section 1547(e) of the Vehicle Code,[6] Licensee argues that "a decision to consent

---

[6] Section 1547(e) states, in relevant part:

> [i]n any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal.

**(Footnote continued on next page…)**

9

to or decline a request to submit to the chemical testing of blood could have a severe impact in [a] criminal DUI case." (*Id.* at 11.) This is because refusal can be introduced into evidence at any criminal proceeding arising under the Vehicle Code and, therefore, motorists should have the right to consult with an attorney before deciding whether to submit to a chemical test. Licensee contends that the language concerning the right to counsel in Form DL-26 should be removed, or a police officer should advise a licensee that a refusal could be admissible in a criminal case. (*Id.*) Licensee advises that the Pennsylvania Supreme Court has recently "granted allocator to consider whether Section 1547(e) is violative of [A]rticle I [S]ection 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution to the extent that it permits evidence of an arrestee's refusal to submit a sample of blood for testing without a search warrant as proof of consciousness of guilt at the arrestee's trial on a charge of DUI[]" in *Commonwealth v. Bell*, 183 A.3d 978 (Pa. 2018).[7] (*Id.* at 11-12.) Licensee, acknowledging the current state of the law, further advises he is raising the issue in this Court to preserve it for appeal.

To the extent Licensee contends that a post-*Birchfield* blood test implicates the Fourth Amendment's warrant requirement, Licensee is correct. However, Licensee's argument that since a blood test implicates Fourth Amendment protection, motorists should have a right to consult an attorney before deciding whether to submit to a chemical test, is not clearly developed. Licensee cites no

---

**(continued…)**

75 Pa. C.S. § 1547(e).

[7] The docket for *Commonwealth v. Bell*, No. 11 MAP 2018, reflects that on November 30, 2018, the matter was submitted on briefs to the Pennsylvania Supreme Court.

cases interpreting an individual's right to counsel under Article I, Section 9 of the Pennsylvania Constitution,[8] or the Sixth Amendment.[9] Counsel has not articulated in what way *Birchfield,* which does not address the right to counsel, affects our jurisprudence in this area. Licensee argues that refusal can have implications on an underlying criminal proceeding because Section 1547(e) of the Vehicle Code allows the fact of that refusal to be admitted into evidence. It thus appears that Licensee's argument may be focused on the admissibility into evidence of a licensee's refusal to take the test in Section 1547(e) of the Vehicle Code and that subsection's constitutionality, a matter currently before the Supreme Court in *Bell* and not at issue in this case.

We understand that Licensee is trying to preserve his arguments for appeal. Based upon our review of the issues raised by Licensee, and the limited argument made, we will not re-examine our precedent, which holds that a licensee is not entitled to consult with an attorney before deciding whether to submit to a chemical test. For the forgoing reasons, we affirm the July 26, 2018 Order of common pleas denying Licensee's appeal of a one-year suspension of his operating privileges.

**RENÉE COHN JUBELIRER,** Judge

---

[8] Article I, section 9 of the Pennsylvania Constitution provides that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel . . . ." PA. CONST. art. I, § 9.

[9] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin R. Collons,      :
      Appellant  :
           :
     v.     :  No. 1186 C.D. 2018
           :
Commonwealth of Pennsylvania, :
Department of Transportation,  :
Bureau of Driver Licensing,   :
      Appellee  :

## O R D E R

  **NOW**, July 2, 2019, the Order of the Court of Common Pleas of Chester County dated July 26, 2018, is **AFFIRMED.**

              _____
              **RENÉE COHN JUBELIRER,** Judge