**Ketan B. VORA, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 2013.

Decided Oct. 30, 2013.

744

John E.D. Larkin, West Chester, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Ketan B. Vora (Licensee) appeals from an order of the Court of Common Pleas of Chester County (trial court) denying his appeal from a one-year suspension of his operating privilege for refusing to submit to chemical testing after his arrest for violating Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802 (relating to driving under the influence (DUI) of alcohol or controlled substance).[1] For the reasons that follow, we affirm.

On June 1, 2012, Licensee was operating his vehicle on Greenhill Road near the intersection of Boot Road in West Chester, Chester County, when he was involved in a single vehicle accident. The police officers who responded to the accident scene noted that Licensee had slurred speech and admitted to drinking alcoholic beverages that evening. After administering field sobriety tests and a breathalyzer test, the officers determined that Licensee was impaired. Licensee was placed under arrest and taken to Chester County Hospital (hospital) for the collection of a blood sample which was to be submitted for chemical testing and determination of his blood alcohol content (BAC). However, Licensee refused to provide a blood sample at that time and was transported to the police station for processing. During processing, Licensee asked to be taken back to the hospital to provide a blood sample, but the officers denied his request.

On June 21, 2012, Licensee received notice from the Pennsylvania Department of Transportation, Bureau of Driver Licensing (PennDOT) that his operating privilege

1. Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b), provides, in relevant part:
   (b) Suspension for refusal.—
      (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
      (i) Except as set forth in subparagraph (ii), for a period of 12 months.

was suspended for a period of one year, effective July 30, 2012, pursuant to Section 1547(b)($l$)(i) of the Vehicle Code for refusal to submit to testing. Licensee appealed to the trial court.

At the hearing, Cheryl Taylor (Officer Taylor), a patrol officer in the West Goshen Township Police Department, testified that after arresting Licensee for DUI, she drove him to the hospital for blood testing, and upon arrival at the hospital, said that she was going to ask him to submit to blood testing but he stated that he did not want to give blood. Officer Taylor explained that she took Licensee into the hospital anyway and when Licensee was in the triage room where the blood sample was to be taken, he again stated that he was not going to give blood. She testified that at that point, she read Licensee the entire DL–26 Form,[2] but Licensee again refused to give blood. Officer Taylor explained:

I kept trying to explain to him certain important sections, that this had nothing to [do] with the DUI. He would, in fact, lose his license for at least a year, up to eighteen months for a refusal. I repeated that probably ten times to him just to try to get that through, people lose their license on top of everything else.

He then wanted to read the form. I allowed him to do that. After about five minutes of the form being in front of him, I asked him if he was comfortable, read it, understood, was he going to give blood. He [asked] was there a time limit on reading the form. So I allowed

him another five minutes. Then after that time I said look, you're either going to have to give blood or not. We spent a total of twenty minutes tying up the triage room. And he said that he was not going to give blood. He also refused to sign the form.

(December 6, 2012 Hearing Transcript at 5–6).

John Liss (Officer Liss), another patrol officer in the West Goshen Township Police Department, testified that he met Officer Taylor at the hospital on the night of the accident. Officer Liss testified that he witnessed Officer Taylor's interaction with Licensee in the triage unit, and confirmed Officer Taylor's testimony regarding those events.

Sergeant Joseph Burt (Sergeant Burt), another officer in the West Goshen Township Police Department, testified that he processed Licensee after the officers brought Licensee to the police station from the hospital. He stated that during processing, he told Licensee that he made a mistake by refusing to submit to blood testing, at which point Licensee "requested a Mulligan which is a do over." (December 6, 2012 Hearing Transcript at 30). Sergeant Burt testified that he then informed Licensee that he would discuss it with Officer Taylor because she was the arresting officer. He explained:

So I went into the squad room. I explained it to Officer Taylor. We both looked at the clock. It was shortly after 3:00. Incident occurred at 1:14 when the accident came in, so we were right there at the two-hour rule.[3] I person-

2. The DL–26 Form contains the chemical test warnings required by Section 1547 of the Vehicle Code, which are also known as the implied consent warnings.

3. 75 Pa.C.S. § 3802(a)(2) provides:
An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% **within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.**

ally didn't want to take him back up there, be delayed by a lab tech, have blood drawn after two hours, after 3:14. So basically Officer Taylor and I determined no, we were not going to give him an opportunity at that point. He had plenty of opportunities prior to that to submit to the blood test. At that point it was just not enough time left.

*Id.* at 30–31.

Licensee testified that when he arrived at the hospital, he was not informed of his purpose for being there. He explained that he was confused by Officer Taylor's implied consent warnings, which he understood to be a waiver of his right to an attorney. He stated that Officer Taylor then asked him to read the DL–26 Form himself, but he could not comprehend the form because he was intoxicated and said that he would not sign it without a lawyer present. Licensee testified that he was not given the opportunity to provide a blood sample without signing the DL–26 Form. He explained that it was only after he returned to the police station and spoke with Officer Liss and Sergeant Burt that he realized his discussion with Officer Taylor at the hospital was about submitting to a blood test, and, at that point, he asked to be taken back to the hospital to undergo the blood test. Licensee denied ever re-

fusing to provide a blood sample, stating, "I did not realize that this was about the blood portion of it. I'm willing to give blood. I never had an issue giving blood. If I did I would not have even done any field sobriety test." (December 6, 2012 Hearing Transcript at 35–36).[4]

The trial court denied Licensee's appeal. In its subsequent Opinion, the trial court explained that it found that the credible testimony of Officer Taylor, Officer Liss and Sergeant Burt established that Licensee was specifically asked whether he consented to chemical testing of his blood and "was aware he was refusing two separate actions, the signing of the DL–26 and the chemical test of his blood." (Trial Court's July 5, 2013 Opinion at 4). The trial court found Licensee's testimony not credible, rejecting his assertion that he "was confused or 'intoxicated' to such a degree that he was unable to understand his rights and the consequences under the Implied Consent Law." *Id.* at 5. The trial court also rejected Licensee's contention that the officers had a duty to return him to the hospital after his refusal, explaining that a defendant's right to request a chemical test of his blood is limited to situations where no test has been requested by the arresting officer. This appeal by Licensee followed.[5, 6]

(Emphasis added). *See also* 75 Pa.C.S. § 3802(b) and (c).

4. On rebuttal, Officer Taylor testified that she never said that Licensee had lost his chance to have a blood test because he did not sign the form; that Licensee never indicated that he did not understand the warnings; and that she did not even ask Licensee to sign the form until after he had refused to take a blood test 20 times.

5. This Court sent Licensee a correction notice, dated January 29, 2013, instructing him to serve notice of his appeal on the trial court and court reporter pursuant to Pennsylvania Rule of Appellate Procedure 906. By order

dated March 5, 2013, this Court dismissed Licensee's appeal for failure to comply with the correction notice. However, Licensee filed an Application for Reconsideration, which this Court granted by order dated May 10, 2013. After reinstatement of his appeal, Licensee then filed an Application for Supersedeas Pending Appeal, which this Court also granted.

6. Our review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Lanthier v. Department of Transportation, Bureau of Driver Li-*

■ On appeal, Licensee, relying upon the Superior Court's recent decision in *Commonwealth v. Barker,* 70 A.3d 849 (Pa.Super.2013), contends that he was entitled to chemical testing pursuant to the plain language of Section 1547(f) of the Vehicle Code, 75 Pa.C.S. § 1547(f).[7] Licensee argues that because the officers did not have a valid justification for refusing his request to undergo a blood test after he had returned to the police station, it was "reasonably practicable" to conduct the test and, therefore, his request should have been honored. Notwithstanding that we are not bound by the Superior Court's decision and that case was a criminal case, not, as here, an administrative appeal from a license suspension, Licensee's reliance on *Barker* is misplaced.

In *Barker,* the licensee was transported to a hospital by a police officer for blood testing after field sobriety tests suggested he was under the influence of a controlled substance. At the hospital, the licensee refused to have his blood drawn because he was a diabetic and had previously developed an infection as a result of an injection. The licensee instead requested to undergo a breathalyzer, urine or hair follicle test, but the officer refused the request. Finding that the licensee's request to undergo a urine test was neither impracticable nor unreasonable, the Superior Court held that the officer's refusal to allow alternate testing was a clear violation of the statutory right conferred by Section 1547(i) and "deprived [licensee] of substantial evidence that might well have soundly rebutted the Commonwealth's allegations." 70 A.3d at 860.

Here, unlike the licensee in *Barker,* Licensee did not request an alternative chemical test after refusing to submit to a blood test at the hospital and did not provide a valid justification for his refusal. As the Superior Court specifically noted in *Barker.*

> [W]e find this case readily distinguishable from the decisions ... in which the Commonwealth Court resolved the license suspension appeals of motorists who had refused testing *without a valid reason.* See, e.g., McGee v. Commonwealth, 803 A.2d 255, 259–60 (Pa. Cmwlth.2002) (affirming a license suspension and officer's refusal of an alternative to a breath test where motorist did not aver any medical condition that prevented his completing the breath test); Mooney v. Com., Dept. of Transp. Bureau of Driver Licensing, 654 A.2d 47, 50 (Pa.Cmwlth.1994) (concluding that motorist's statement that she feared needles did not provide a satisfactory reason on which to base her request for alternate testing).

*Barker,* 70 A.3d at 860 n. 6 (emphasis in original).

Moreover, Licensee's argument ignores that this Court has consistently held that once a licensee refuses chemical testing, the refusal cannot be vitiated by a later assent. *See McKenna v. Department of Transportation, Bureau of Driver Licensing,* 72 A.3d 294 (Pa.Cmwlth.2013) (licensee's refusal to submit to blood test not vitiated by assent two to three minutes after the refusal); *King v. Department of Transportation, Bureau of Driver Licensing,* 828 A.2d 1 (Pa.Cmwlth.), *appeal de-*

---

*censing,* 22 A.3d 346, 350 n. 5 (Pa.Cmwlth. 2011).

**7.** That section provides:

(i) **Request by driver for test.**—Any person involved in an accident or placed under arrest for a violation of section 1543(b)(1.1), 3802 or 3808(a)(2) may request a chemical test of his breath, blood or urine. Such requests shall be honored when it is reasonably practicable to do so.

*nied*, 577 Pa. 738, 848 A.2d 931 (2002) (licensee who initially refused breath test but asked to take test thirty to forty minutes later was subject to penalties for refusal); *Cunningham v. Department of Transportation*, 105 Pa.Cmwlth. 501, 525 A.2d 9 (1987) (refusal not vitiated by assent five minutes after the refusal). Clearly, Section 1547(i) of the Vehicle Code and the analysis of the Superior Court in *Barker* are inapplicable to this case. *Barker* simply has no application to appeals from license suspensions for refusing to submit to chemical testing.

In order to sustain a suspension of a licensee's operating privilege under Section 1547 of the Vehicle Code for a refusal to submit to chemical testing, PennDOT must establish that the licensee (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so;[8] and (4) was warned that refusal might result in a license suspension. *Lanthier*, 22 A.3d at 348. Once that burden is met, the licensee has the burden to prove that (1) he was physically incapable of completing the test or (2) his refusal was not knowing and conscious. *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa.Cmwlth.2005).

Here, the trial court determined that PennDOT satisfied all of the above elements based on the credible testimony of the officers. The trial court further found Licensee's testimony not credible and, accordingly, concluded that Licensee failed to meet his burden of proving that he was physically incapable of completing a blood test or that his refusal was not knowing and conscious. As finder of fact, the trial court is the sole arbiter of questions concerning the credibility and weight of the evidence, and the trial court's determinations in these respects will not be disturbed unless the trial court abuses its discretion. *McKenna*, 72 A.3d at 298. Finding no abuse of discretion by the trial court, we will not disturb its credibility determinations.

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this *30th* day of *October*, 2013, the order of the Court of Common Pleas of Chester County, dated January 8, 2013, at No. 2012–06499–LS, is affirmed.

---

**8.** This Court has consistently held that anything substantially less than an unqualified, unequivocal assent to submit to testing constitutes a refusal to do so. *McKenna*, 72 A.3d at 298; *Lanthier*, 22 A.3d at 348.