IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John D. Nardone      :
            :
    v.       :
            :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,    :  No. 2195 C.D. 2013
    Appellant   :  Submitted: June 27, 2014

BEFORE:  HONORABLE BERNARD L. McGINLEY, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY      FILED: August 4, 2014

   The Department of Transportation, Bureau of Drivers Licensing (DOT) appeals the Order of the Court of Common Pleas of Luzerne County (trial court) which sustained the appeal of John D. Nardone (Nardone) from a one year suspension of his operating privilege pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. §1547(b)(1).[1]

   By official notice dated July 16, 2013, DOT informed Nardone that his operating privilege was suspended for one year, effective August 20, 2013, as a

---

[1] Section 1547(b)(1) of the Code provides:

**(b) Suspension for refusal.-**

   (1) If any person placed under arrest for a violation of section 3802 [relating to driving under influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person…(i)…for a period of 12 months.

result of his refusal to submit to chemical testing on June 26, 2013. Nardone appealed the suspension to the trial court.

At a *de novo* hearing, Officer Robert John Odgers, Jr. (Officer Odgers) of the Dallas Township Police Department (Department) received a dispatch call regarding an erratic driver on June 26, 2013. Notes of Testimony, October 21, 2013, (N.T.) at 4; Reproduced Record (R.R.) at 14a. Officer Odgers made the following observations:

> [W]e were following the vehicle northbound. I observed the vehicle was travelling at a speed too grave for the situations of the roadway: Hills, entrances to residential area, curves. Once behind the vehicle…I observed the vehicle make a right-hand turn onto Dakota Drive. When the driver made that turn, it was exaggerated and he was in the opposite lane coming out of Dakota Drive….While still behind the vehicle, we followed it into Dakota Drive. The driver then again made a swerve, almost striking a stone wall in Dakota Drive. We…activated our emergency lights and siren, stopped the vehicle. The vehicle proceeded a little bit further and pulled into a driveway to where he stopped.
> ….
> …I approached the driver's side window, began to speak with the driver….The driver did have bloodshot, glassy eyes. And when I asked him some questions like where he was coming from and asked him about why his driving was so sudden at times, he stated that he was coming from his daughter' house, and when he did speak he had slurred speech.

N.T. at 5-7; R.R. at 14a-15a.

Officer Odgers observed Officer Reinheimer from the Department administer a Standardized Field Sobriety Test (SFST). Officer Odgers saw

2

Nardone was "off balance at points" during the nine step turnaround test. N.T. at 9; R.R. at 15a. During the one-legged stand test, Officer Odgers observed that Nardone "failed to hold his foot at the designated height Officer Reinheimer requested, and he had to lower his foot several times to maintain his balance." N.T. at 12; R.R. at 16a. Officer Odgers administered a preliminary breath test with the portable breath machine and the reading of that test was a .115. Officer Odgers placed Nardone under arrest for driving under the influence of alcohol. N.T. at 13; R.R. at 16a.

Officer Odgers transported Nardone to Geisinger Wyoming Valley Hospital. Officer Odgers read Nardone the PennDOT Form DL-26, which contained the Implied Consent Law. Officer Odgers requested that Nardone submit to a blood test.

> [H]e requested to take a breath test. I advised him that, again, I wanted him to submit to a chemical test of blood. And again, he requested breath. I advised him that a breath test machine was not available and I would like him to - - I wanted him to take the blood test.
> ….
> [Nardone] pointed at a bump on his left arm….He said he would rather [take] a urine test instead of the blood test.

N.T. at 16-17 and 19; R.R. at 17a-18a.

Bradley Balutis (Officer Balutis), who worked patrol with Officer Odgers on June 26, 2013, also testified. He noticed Nardone "had bloodshot, glassy eyes. He did speak with a slurredness in his speech, as well as I did indicate an odor of an intoxicating beverage about his breath." N.T. at 22-23; R.R. at 18a-

3

19a. During the one-legged stand test, Officer Balutis also observed that Nardone was off-balance, had to put his foot down, and did not follow directions.

Nardone testified that he was drinking earlier that day but he could not recall how much. N.T. at 31; R.R. at 21a. Nardone explained that on June 26, 2013, he turned onto Dakota Drive in a manner that was no different than he does every day. Nardone maintained that he "did not come close to hitting" the stone wall. N.T. at 32; R.R. at 21a. Nardone believed he had no difficulty performing the nine step turnaround test or understanding the instructions but that "I would have difficulty if I tried it [the one-legged stand test] right now. It's very hard to stand on one foot to keep your balance with your foot out." N.T. at 33; R.R. at 21a. When Officer Odgers asked Nardone to undergo a chemical test for blood, Nardone explained:

> I showed him what had developed on my arm as a result of a bump and a cut, a very, very minor cut, about four o'clock that day. And as I was describing it and, if he correctly notes, pointing to it, I said I really don't know what this is, but I'm concerned about a break in the skin, because possibly in my mind could have been just a pooling of the blood. And no pain but when you squeezed it, it was soft. And as I was describing him that I said I'm willing to take a urinalysis, a Breathalyzer, or both. I said, but I was expressing my concern about a blood test. And he responded it's an officer's discretion and it's a refusal. And that's when I said I'm not refusing, sir. I'm willing to take either or both of the alternative tests. And he said refused, sign here.
> ….
> So my concern was the needle in either arm was there was something going on with my body, with my blood with the coagulation that I just didn't want to have the skin broken. I did not think that the breathalyzer reading

4

that they told me at the scene was accurate.  I did not feel that I was impaired at all.

N.T. at 35-36; R.R. at 22a.

By order dated November 6, 2013, the trial court sustained Nardone's appeal:

> This Court finds the testimony of [Nardone] credible and, consequently, determines he did not refuse to submit to chemical testing in violation of Section 1547(b) of the [Code]…
>
> [Nardone] maintains he exercised his statutory right to alternative chemical testing of urine or breath pursuant to Section 1547(i) of the [Code]…[Nardone] cites the recent Pennsylvania Superior Court decision in Commonwealth v. Barker, 70 A.3d 849…([Pa. Super.] 2013), as authority for his position.  In Barker, a criminal case, the motorist refused to have blood drawn because he was diabetic and had previously developed an infection from an injection and, instead, requested to undergo a Breathalyzer, urine or hair follicle test.  The arresting officer refused that request.  The Superior Court found the request neither impracticable nor unreasonable and held the officer's refusal to allow alternate testing violated his statutory right under Section 1547(i).  Barker's DUI conviction was reversed.
>
> Here, the Commonwealth directs this Court's attention to the very recent (October 30, 2013) decision of the Commonwealth Court in [Vora v. Department of Transportation, Bureau of Driver Licensing, 79 A.3d 743, 747 (Pa. Cmwlth. 2013)], in which the Court stated that the Barker case has no application to appeals from license suspensions for 'refusing to submit to chemical testing.' (page 9).  The Vora Court pointed out it was not bound by the Superior Court's decision in Barker and that case was a criminal case, not an administrative appeal from a license suspension.  Nonetheless, it pointed

5

out that the Appellant's reliance on Barker was misplaced.

Pointing to an earlier Commonwealth Court decision, the Vora Court stated that in order to sustain a license suspension under Section 1547 of the [Code] for refusing to submit to chemical testing, [DOT] must establish four elements. For our purposes element (3) is important, namely, the licensee refused to submit to a chemical test.

In the case before this Court, [DOT] did not establish Nardone refused to submit to a chemical test. In fact, his accent [sic] to a test was unqualified and unequivocal. His assent is not diminished by his request for an alternative test….On this point, the testimony of Officer Odgers and Officer Bradley Balutis is not credible. Nardone clearly was exercising his rights pursuant to Section 1547(i). Also, clearly the police officers believed if Nardone did not submit to the test of their choosing he was refusing to submit to chemical testing.

Trial Court Opinion, November 6, 2013, at 2-4; R.R. at 44a-46a.

DOT contends[2] that the trial court committed an error of law when it held that Nardone did not refuse Officer Odger's request for a chemical test of his blood because Nardone offered instead to submit to a breath and/or urine test. DOT also argues that Nardone failed to satisfy his burden of proof that he was physically incapable of submitting to a blood test due to a bump on his arm.

---

[2] This Court's review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law were committed, or whether the trial court committed an abuse of discretion in making its determination. *Department of Transportation v. Renwick*, 669 A.2d 934 (Pa. Cmwlth. 1996).

DOT first contends that the trial court committed an error law when it held that Nardone did not refuse Officer Odger's request for a chemical test of his blood because he offered instead to submit to a breath and/or urine test.[3]

Whether a licensee has refused chemical testing is a question of law based upon the facts found by the trial court. *Purcell v. Department of Transportation, Bureau of Driver Licensing*, 689 A.2d 1002 (Pa. Cmwlth. 1997). Anything less than a licensee's unqualified, unequivocal assent to submit to chemical testing constitutes a refusal under Section 1547 of the Code. A refusal can be implied from a motorist's actions. If DOT establishes that a licensee refused to take a test, the licensee must establish that the refusal was not knowing or conscious or that he physically was unable to take the test. *Lemon v. Department of Transportation, Bureau of Driver Licensing*, 736 A.2d 534 (Pa. Cmwlth. 2000).

In the present case, Nardone argues that because he requested an alternative chemical test, the trial court properly concluded that his conduct did not establish a refusal to undergo chemical testing.

---

[3] In cases involving the suspension of a driver's license for a refusal to submit to chemical testing, DOT must prove: 1) that the licensee was placed under arrest for driving under the influence of alcohol by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; 2) that he was requested to submit to chemical testing; 3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and 4) that the licensee refused to submit to the test. *Banner v. Department of Transportation, Bureau of Driver Licensing,* 737 A.2d 103 (Pa. Cmwlth. 1999). Once DOT meets that burden, the licensee has the burden to prove that (1) he was physically incapable of completing the breath test or (2) his refusal was not knowing and conscious. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 691 A.2d 450 (Pa. Cmwlth. 1997).

This Court has consistently held that Section 1547 does not afford a driver a choice among the three tests noted under that section; rather, it is the police officer who has the option to choose the type of chemical test to administer. *Tarka v. Department of Transportation, Bureau of Driver Licensing*, 756 A.2d 138 (Pa. Cmwlth. 2000).

In the present case, Officer Odgers requested that Nardone submit to a chemical test of blood and Nardone refused. Nardone offered to submit to a Breathalyzer test or urinalysis. Nardone "recognized what the consequences of a refusal were….He said officer's discretion, as it related to the blood test, and my request constituted refusal, that's all he said." N.T. at 37-38; R.R. at 22a. Because Officer Odgers had the right to choose the type of test and he chose to administer a blood test, he also had the right to deny Nardone's request for a different type of test. Nardone's subsequent offer to submit to a Breathalyzer test or urine test does not vitiate his refusal to submit to the blood test. Therefore, the trial court's determination that Nardone's "assent is not diminished by his request for an alternative test" is irrelevant to the determination of whether he refused the test. Accordingly, the trial court erred when it concluded that Nardone did not refuse the test.

DOT also contends that Nardone failed to satisfy his burden of proof that he was physically incapable of submitting to a blood test due to a bump on his arm.

Once DOT satisfies its initial burden of proof, the burden then shifts to the licensee to show that he was physically unable to take the test or that the refusal was not knowing or conscious. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 18 (Pa. Cmwlth. 2010).

Where a licensee suffers from a medical condition that affects his or her ability to perform a test and that condition is not obvious, a finding that a licensee was unable to take the test for medical reasons must be supported by competent medical evidence. *Wright v. Department of Transportation, Bureau of Driver Licensing*, 788 A.2d 445 (Pa. Cmwlth. 2001).

Here, it is undisputed that Nardone did indicate to Officer Odgers that he was concerned about submitting to a blood test because of a bump on his arm and "a very, very minor cut." N.T. at 35; R.R. at 22a. However, Nardone failed to satisfy his burden of proof that he was incapable of submitting to a blood test due to this bump on his left arm.

This Court concludes that to accept Nardone's argument that he was capable of providing the required medical evidence would be to overrule the many cases holding that a driver's simple declaration of incapacity to perform a chemical test, without medical proof, will not justify refusal. *Department of Transportation v. Gross*, 605 A.2d 433 (Pa. Cmwlth. 1991). Even assuming arguendo that Nardone's statements to Officer Odgers constituted notice of a medical condition, Nardone's failure to establish such condition through competent medical testimony meant that the duty to offer another kind of test was not triggered.

9

Accordingly, this Court reverses.

_____
BERNARD L. McGINLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John D. Nardone                          :
                                         :
            v.                           :
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing,              :     No. 2195 C.D. 2013
                    Appellant            :

# **O R D E R**

AND NOW, this 4th day of August, 2014, the Order of the Court of Common Pleas of Luzerne County is reversed.

_____
BERNARD L. McGINLEY, Judge