IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Jean Straile             :
                                      :
        v.                 :  No. 262 C.D. 2023
                                     :  Submitted: May 7, 2024
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing,         :
                   Appellant  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                 FILED: June 6, 2024


The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), Bureau of Driver Licensing (Bureau), appeals from the February 16, 2023 order of the Court of Common Pleas of Northampton County (trial court) sustaining the statutory appeal of Melissa Jean Straile (Licensee) from a one-year suspension of her operating privilege for refusing to submit to chemical testing under 75 Pa.C.S. § 1547, commonly referred to as the Implied Consent Law, after her arrest for violating Section 3802 of the Vehicle Code,[1] 75 Pa.C.S. § 3802 (Driving under influence of alcohol or controlled substance (DUI)). After review, we reverse.

---

[1] 75 Pa.C.S. §§ 101 - 9805.

## I. Factual and Procedural Background

On February 19, 2022, a police officer with the Hellertown Police Department, Carl Fischer (Officer Fischer), observed a vehicle going the wrong way down a one-way street. Reproduced Record (R.R.) 20a-21a. Officer Fischer tried to initiate a traffic stop, but the vehicle continued to travel several blocks, missing opportunities to pull over, before stopping. *Id.* at 23a.

Once the vehicle stopped, Officer Fischer approached and observed Licensee "had red, bloodshot eyes, and an odor of an intoxicating beverage came from her person." *Id.* at 22a. When Officer Fischer asked Licensee to exit the vehicle, he observed she moved slowly and noticed she slurred her words. *Id.* at 23a. Officer Fischer attempted to administer three field sobriety tests to Licensee: the horizontal gaze nystagmus test (HGN), the walk-and-turn test, and the one-leg stand test. *Id.* at 25a-27a. During the HGN, Licensee kept moving her head, despite Officer Fischer's instructions to keep her head still, and Officer Fischer was unable to complete the test. *Id.* at 25a. During Licensee's performance of the walk-and-turn test, Officer Fischer observed "six out of eight validated clues" of impairment, indicating to Officer Fischer that Licensee had at least a .08 blood alcohol content, which is over Pennsylvania's legal limit. *Id.* at 26a. Officer Fischer offered to conduct the one-leg stand test, but Licensee refused. *Id.* at 27a. Licensee also refused to take a preliminary breath test. *Id.* at 27a.

Based on his observations of Licensee's driving, his interactions with Licensee, and Licensee's performance on the field sobriety tests, Officer Fischer arrested Licensee for suspicion of DUI. *Id.* at 28a. Officer Fischer transported Licensee to the Bethlehem Township DUI Center (DUI Center) and transferred her into the custody of another officer, Officer Jason Heaton (Officer Heaton), for

processing. *Id.* Officer Fischer remained in the room next to the one in which Licensee underwent DUI processing. *Id.* at 29a.

Before her processing formally began, Licensee indicated she would not give blood at the DUI Center. *See id.* at 46a. Licensee asserted there was an agreement to transport her to the hospital, and she intended to give a blood sample there. *See id.* at 58a. She testified she "wasn't comfortable at [the DUI Center] after [she] had been told that they would take [her] to the hospital. [She] was confused." *Id.* at 62a. The police considered Licensee's refusal to undergo a blood draw at the DUI Center a violation of the Vehicle Code, and accordingly, the Bureau mailed her a letter on March 10, 2022, informing her that the Bureau suspended her operating privilege for one year, effective April 14, 2022, for violating Section 1547(b) of the Vehicle Code by refusing to submit to testing. R.R. at 7a. Licensee appealed to the trial court, and it held a *de novo* hearing.

At the hearing, Officer Fischer testified Licensee discussed consenting to a blood draw at the hospital. *Id.* at 33a. He was not opposed to that initially, but then realized "logistically it would be impossible." *Id.* at 34a. He explained "we were rapidly approaching that two[-]hour mark. There was not enough time to drive her down there, start the process . . . it can take some time." *Id.* at 33a. Officer Fischer made the decision not to transport Licensee to the hospital. *Id.* at 40a-41a. When Officer Fischer was asked whether "[Licensee's] willingness to consent to the blood conditioned by her as to where the blood draw was going to occur, namely, the hospital?" he responded "[y]es." *Id.* at 42a-43a.

After Officer Fischer testified, the Bureau called Officer Heaton. *Id.* at 44a. Officer Heaton testified he was employed as a DUI Processor at the DUI Center. *Id.* He had been employed at the DUI Center for approximately two and one-half years

3

and had also been a City of Bethlehem police officer for five years.  *Id.* at 44a-45a.  Officer Heaton explained it was ultimately Officer Fischer, "the arresting officer's choice on what he'd like to do, what chemical test he would like to ask the person in custody for, as well as when and where that test occurs."  *Id.* at 49a.  Officer Heaton offered that before he processes an individual, he "usually explains how the process works to make people more comfortable, have them have an understanding of how the process is going to go once we are on a recorded camera."  *Id.*   For Licensee, Officer Heaton explained the blood testing process to Licensee and the trial court saw video evidence showing Officer Heaton reading to Licensee the implied consent warning from the PennDOT DL-26B form.   Officer Heaton testified that before he started Licensee's formal processing, she indicated she would not give blood at the DUI Center.  *Id.* at 46a.  Officer Heaton tried to offer "possible alternatives" and was "attempting to make [a blood draw in the hospital] work," but ultimately, it "did not work out."  *Id.* at 47a.  Officer Heaton explained that given the time frame in which a blood test must occur, travel to a hospital was not a viable option.   *Id.*  Officer Heaton recollected Licensee received an explanation "that conditions have changed, and information has changed, and we are now requesting blood here and now."  *Id.* at 48a.  Officer Heaton testified Licensee "was again, I believe, read the DL-26B [form] and refused."  *Id.*  Officer Heaton confirmed it was ultimately Officer Fischer, "the arresting officer's choice on what he'd like to do, what chemical test he would like to ask the person in custody for, as well as when and where that test occurs."  *Id.* at 49a.

Licensee testified she was "uncomfortable" at the DUI Center and had fears it was not a "sterile environment."  *Id.* at 62a.  Licensee confirmed she initiated the conversation about going to the hospital.  *Id.* at 61a.  She testified the officers

4

initially agreed to take her to the hospital, but then told her it would not happen. She said she thought the agreement was to take her to the hospital, and then she was "confused." *Id.* at 62a. When asked what she would have done if she was told at the outset the hospital was not an option, she responded she "[didn't] know what [her] decision would have been." *Id.* at 60a-61a.

Ultimately, Licensee refused to give a blood sample at the DUI Center. Accordingly, the Bureau imposed a one-year suspension of Licensee's operating privilege under 75 Pa.C.S. § 1547(b)(1)(i)[2] for refusal to submit to chemical testing.

The trial court addressed the officers and told them they did a good job but added Licensee's "state of mind changed once you told her that she could go to the hospital." *Id.* at 78a. At the end of the hearing, the trial court granted Licensee's appeal and ordered the Bureau to reinstate Licensee's operating privilege. The Bureau appealed.

The Bureau submitted a statement of errors complained of on appeal in compliance with Pa.R.A.P. 1925(b). The trial court issued a Pa.R.A.P. 1925(a)

---

[2] Section 1547(b) of the Vehicle Code provides:

(b) Civil penalties for refusal.

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. §1547(b)(1)(i).

opinion, in which the trial court noted the Bureau's issues were "consistent with the prevailing law" and recommended this Court remand the matter to the trial court.

## II. Discussion

Our standard of review is to determine "whether common pleas committed an error of law, whether common pleas abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018).

For the Bureau to support its suspension of Licensee's operating privilege under 75 Pa.C.S. § 1547(b)(1)(i) for refusing to submit to a blood test, the Bureau must establish

> Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) Licensee was asked to submit to a chemical test; (3) Licensee refused to do so; and (4) Licensee was specifically warned that a refusal would result in the suspension of [her] operating privileges and would result in enhanced penalties if [s]he was later convicted of violating Section 3802(a)(1).

*Garlick*, 176 A.3d at 1035 (citing *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005)).

Once the Bureau meets its burden, the burden shifts to the licensee to prove (1) she was physically incapable of completing the test or (2) her refusal was not knowing and conscious. *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 748 (Pa. Cmwlth. 2013) (citing *Martinovic,* 881 A.2d at 34).

Here, there is no dispute the Bureau satisfied three of the four elements above. The issue on appeal involves the third element and whether Licensee refused to submit to a chemical test. "The question of whether a licensee refuses to submit to

6

a chemical test is a legal one subject to plenary review on appeal." *Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 14 (Pa. Cmwlth. 2017).

This Court has held that "[a]nything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal." *Boseman*, 157 A.3d at 14. Here, based upon the testimony of Officer Fischer, Officer Heaton, and Licensee, Licensee refused to submit to the blood test at the DUI Center. Even if we accepted that Licensee would have submitted to the blood test if she was taken to the hospital, such assent was conditional and, therefore, constitutes a refusal. Further, Licensee's initial refusal to submit to a chemical test cannot be vitiated by later consent. *Vora*, 79 A.3d at 747. The record lacks any evidence to demonstrate Licensee gave an unqualified or unequivocal assent to submit to chemical testing. Therefore, Licensee refused to submit to the blood test. *See id.*; *see also Winebarger v. Dep't of Transp., Bureau of Driver Licensing*, 655 A.2d 1093, 1095-96 (Pa. Cmwlth. 1995) (licensee's statement that there be only two attempts to draw blood and limiting the second attempt to a specific arm were considered a refusal to submit to testing); *Colgan v. Dep't of Transp., Bureau of Driver Licensing*, 561 A.2d 1341, 1342 (Pa. Cmwlth. 1989) (licensee's requirement that blood be drawn from his toe was in effect a refusal to submit to chemical testing). Further, Licensee produced no evidence she was physically unable to perform the test or that her refusal was not knowing and conscious.

### III. Conclusion

Based on our review of the record, and consistent with our precedent, we conclude the trial court erred by sustaining Licensee's appeal. The evidence demonstrates Licensee refused to undergo chemical testing after being advised of

7

the requirements of the Implied Consent Law.  Further, the record is devoid of any evidence Licensee's refusal was not knowing or conscious.  Accordingly, we reverse the trial court's order and direct the Bureau to reinstate the one-year suspension of Licensee's operating privilege.

 

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Jean Straile            :
                                    :
        v.                 :  No.  262 C.D. 2023
                                    :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                 Appellant  :

# **O R D E R**

**AND NOW**, this 6th day of June 2024, the February 16, 2023 order of the Court of Common Pleas of Northampton County is **REVERSED**, and the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, is hereby directed to reinstate the one-year suspension of Melissa Jean Straile's operating privilege.

_____
STACY WALLACE, Judge