IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Susan Marie Fite, | : |
| | : |
| Appellant | : |
| | : |
| v. | : No. 124 C.D. 2025 |
| | : Submitted: April 13, 2026 |
| Commonwealth of Pennsylvania, | : |
| Department of Transportation, | : |
| Bureau of Driver Licensing | : |

BEFORE: HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                       FILED: May 27, 2026

Susan Marie Fite (Licensee) appeals the order of the Dauphin County Court of Common Pleas (trial court) dismissing her appeal from a 12-month suspension of her operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Department), pursuant to Section 1547(b)(1)(i) of the Vehicle Code,[1] based on her refusal to submit to a blood test in connection with her

---

[1] 75 Pa. C.S. §1547(b)(1)(i). This statute, commonly known as the Implied Consent Law, states:

> If any person placed under arrest for a violation of [Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802,] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person . . . for a period of 12 months.

arrest for violating Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802 (relating to driving under the influence (DUI) of alcohol or a controlled substance). We affirm.

The facts of this case, as found by the trial court,[2] may be summarized as follows. On May 26, 2024, at approximately 1:32 a.m., Pennsylvania State Police Trooper Jesse Snyder (PSP and Trooper or Trooper Snyder, respectively) was on routine patrol on Peters Mountain Road in Halifax Township. He observed a silver GMC Acadia parked in the parking lot of a closed gas station with its engine running. The Trooper pulled his vehicle into the gas station, parked behind the Acadia, and got out of his patrol car. He then approached the driver's side of the Acadia and made contact with Licensee, who was the car's only occupant, sitting in the driver's seat. Trooper Snyder detected a strong odor of alcohol, and he observed that Licensee had glassy eyes and was slurring her speech. When asked by the Trooper, Licensee stated that she had consumed approximately five beers.

Based on his observations, Trooper Snyder asked Licensee to exit her vehicle to perform field sobriety tests. Licensee submitted to a preliminary breath test, which registered a blood alcohol content (BAC) of 0.154. However, the Trooper was unable to conduct a horizontal gaze nystagmus (HGN) test because

---

[2] In a license suspension appeal, determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact finder. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). As fact finder, the trial court may accept or reject the testimony of any witness in whole or in part. *Id.* In addition, we must view the evidence in a light most favorable to the party that prevailed before the trial court. *Id.* "Thus, we must determine the issue of whether a licensee refused chemical testing 'under the facts found by the trial court [and] not under the testimony [that one of the parties] prefers.'" *Id.* at 765-66 (citation omitted). Moreover, on appeal, our review is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Marino v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d 1066, 1067 n.2 (Pa. Cmwlth. 1997). Our review over questions of law is plenary. *Deliman v. Department of Transportation, Bureau of Driver Licensing*, 718 A.2d 388, 389 n.1 (Pa. Cmwlth. 1998).

Licensee had difficulty understanding the instructions and became belligerent and agitated. Licensee repeatedly refused to perform the HGN test, or any other field sobriety test, instead insisting that she proceed straight to a chemical test of her blood. Based on her behavior, Trooper Snyder placed Licensee into custody and transported her to the PSP Lykens barracks to conduct the blood draw.

After they arrived at the barracks, Trooper Snyder read Licensee the entire DL-26B Form[3] while she was still in the back of the patrol car thereby apprising her of the consequences for her refusal to submit to the test. Licensee was initially willing to submit to a chemical test of her blood, but asked the Trooper to permit her to read the DL-26B Form herself after they were in the processing room. Trooper Snyder provided Licensee with a copy of the Form, which she looked at for several minutes. After Licensee finished, the Trooper took seven or eight minutes to re-explain the contents of the Form to her and answer any questions. Ultimately, Licensee changed her mind and refused to submit to a chemical test of her blood.

As a result, on June 12, 2024, the Department mailed a letter to Licensee informing her that her operating privileges would be suspended for one year effective July 17, 2024, based on her test refusal. On July 9, 2024, Licensee appealed the suspension to the trial court. On January 7, 2025, the trial court conducted a hearing during which Licensee argued, *inter alia*, that the provisions of Section 1547(b)(1)(i) of the Vehicle Code violate her rights under article I, section 8 of the Pennsylvania Constitution, Pa. Const. art. I, §8. Following the hearing, the trial court issued an order dismissing the Licensee's appeal of her suspension, and Licensee filed the instant appeal of the trial court's order.

---

[3] The DL-26B Form "contains the chemical test warnings required by Section 1547 of the Vehicle Code, which are also known as the implied consent warnings." *Vora v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 743, 745 n.2 (Pa. Cmwlth. 2013).

Again, the sole claim that Licensee raises in this appeal is that the requirements of Section 1547(b)(1)(i) of the Vehicle Code violate her rights under article I, section 8.[4]  However, after reviewing the record, the parties' briefs, and the law, we conclude that this issue has been ably resolved in the thorough and well-reasoned opinion of Senior Judge Richard Lewis of the trial court.  Accordingly, we affirm on the basis of his opinion in the matter of *Fite v. Department of Transportation, Bureau of Driver Licensing* (C.C.P. Dauph., No. 2024-CV-04665-LS 2022, filed March 19, 2025).[5]

MICHAEL H. WOJCIK, Judge

---

[4] In relevant part, article I, section 8 states:  "The people shall be secure in their persons . . . from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without . . . probable cause, supported by oath or affirmation subscribed to by the affiant."

[5] *See also Bechtel v. Department of Transportation, Bureau of Driver Licensing*, 352 A.3d 1159 (Pa. Cmwlth. 2026), *petition for allowance of appeal filed*, (Pa., No. 114 MAL 2026, filed February 27, 2026); *see also Pennsylvania AFL-CIO ex rel. George v. Commonwealth*, 757 A.2d 917, 921 (Pa. 2000), wherein our Supreme Court explained:

> [R]ather than remanding the matter without further analysis, we proceed to the merits of [the a]ppellants' [a]rticle III, [s]ection 5 claim for the very reason that it represents a constitutional issue of first impression for this Court, which sits as the ultimate interpreter of the Pennsylvania Constitution.  *See Zemprelli v. Daniels*, [436 A.2d 1165, 1169 (Pa.] 1981) (Supreme Court of Pennsylvania is ultimate interpreter of Pennsylvania Constitution).[FN8]
>
> [FN8] We also note that all parties have briefed the issue on the merits.

Likewise, in this case, the parties have briefed this constitutional issue at all stages of this matter thereby preserving the claim for our Supreme Court's review and disposition.

4

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Marie Fite,                               :
                                                :
                       Appellant                :
                                                :
            v.                                   :   No. 124 C.D. 2025
                                                :
Commonwealth of Pennsylvania,                    :
Department of Transportation,                    :
Bureau of Driver Licensing                       :

## **O R D E R**

AND NOW, this 27th day of May, 2026, the order of the Dauphin County Court of Common Pleas dated January 7, 2025, is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge

ORIGINAL

SUSAN MARIE FITE,
    Appellant

v.

COMMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
TRANSPORTATION, BUREAU OF
DRIVER LICENSING,
    Respondent

:
:
:
:
:
:
:
:
:
:
:
:

IN THE COURT OF COMMON PLEAS
DAUPHIN COUNTY, PENNSYLVANIA

No. 2024-CV-04665-LS
No. 124 CD 2025 (Commonwealth Court)

## TRIAL COURT MEMORANDUM OPINION

Presently before this Court is an appeal filed in the above-captioned matter. This opinion is written pursuant to Pa.R.A.P. 1925(b).

## PROCEDURAL HISTORY

On or about June 12, 2024, PennDOT mailed a letter to Susan Marie Fite (hereinafter "Appellant"), notifying her that because of a refusal to submit to blood testing in violation of Pennsylvania's Implied Consent Law,[1] her driving privileges would be suspended for one (1) year effective July 17, 2024. On July 9, 2024, Appellant, through counsel, filed in the Court of Common Pleas an appeal of her impending license suspension. On July 12, 2024, we issued an Order scheduling a License Suspension Appeal Hearing and directing that the impending suspension of Appellant's driving privileges be stayed pending this Court's final decision in this matter.

On January 7, 2025, the parties appeared before the undersigned for a license suspension appeal hearing. Following the hearing, this Court issued an order denying Appellant's appeal and reinstating the suspension of her driving privileges. On January 28, 2025, Appellant filed a Notice

---

[1] 75 Pa.C.S. § 1547(b)(1)(i).

Page **1** of **10**

050a

of Appeal to the Commonwealth Court and on February 4, 2025, this Court issued an order directing Appellant to file a concise statement of errors complained of on appeal. On February 21, 2025, Appellant filed her statement of errors, listing the following assertions for review:

1. Penalizing the exercise of a constitutional right is fundamentally unfair and violates due process rights guaranteed by the United States Constitution. An individual has a due process right to retain his driver's license except for state action that is constitutionally permissible. It is not permissible under the Due Process Clause to enact civil or criminal penalties because, as here, there was an exercise of the constitutional right to refuse to provide blood to the state without a warrant.

2. Independently, the Pennsylvania Supreme Court guarantees even more fundamental fairness substantive due process protections than the United States Constitution, and prohibits penalizing the exercise of a constitutional right.

3. Because an individual has a Fourth Amendment right to refuse a warrantless blood draw, penalizing the exercise of that right violates his Fourth Amendment search and seizure rights.

4. Independently, Article I, Section 8, is even more protective of search and seizure rights. The penalty here is contrary to a long history of independent heightened privacy rights particularly intrusions on the person, like a blood draw, as well as greater protections for enforcing the warrant requirement.

5. 75 Pa.C.S.A. §1547 violates the above constitutional rights . . . and cannot validly provide for the license suspension and other civil penalties because the state by statute or otherwise cannot grant less rights than those guaranteed by the United States and Pennsylvania Constitutions. The state is also barred by the unconstitutional conditions doctrine from conditioning any right or privilege like driving a car on agreeing to give up constitutional rights. This implied consent statute is unconstitutional facially, and as applied to all those who refuse a warrantless blood test.

Statement of Errors Complained of on Appeal, 2/21/25, ¶ 7.

## FACTUAL BACKGROUND

The following factual background is drawn from testimony received by this Court at the January 7, 2025 License Suspension Appeal hearing.

In the early morning hours of May 26, 2024, Pennsylvania State Trooper Jesse Snyder (hereinafter "Trooper Snyder" or "the Trooper") was on routine patrol on Peters Mountain Road in Halifax Township. Transcript of Proceedings, License Suspension Appeal Hearing, January 7, 2025, pp. 4-5 (hereinafter "N.T." at _____). At 1:32 a.m., the Trooper observed a silver GMC Acadia parked with its engine running in the parking lot of a closed gas station. N.T. at 5-6. The Trooper pulled into the gas station, parked behind the vehicle, and got out of his patrol car. N.T. at 6. The Trooper then approached the driver's side of the vehicle and made contact with Appellant, the vehicle's sole occupant, who was sitting in the driver's seat. N.T. at 6. The Trooper detected a strong odor of alcoholic beverage, and he observed that Appellant had glassy and bloodshot eyes and was slurring her speech. N.T. at 7. When asked about her alcohol consumption, Appellant told the Officer that she had drank approximately five beers. N.T. at 7.

Based on his observations, Trooper Snyder asked Appellant to exit her vehicle so that she could perform various field sobriety tests. N.T. at 8. While the Trooper was able to conduct a preliminary breath test, which registered a BAC of 0.154, he was unable to conduct any other field sobriety testing with Appellant. N.T. 8-9. The Trooper began conducting the horizontal gaze nystagmus (HGN) test, but Appellant had difficulty understanding the instructions, and she became belligerent and agitated. N.T. at 8. Appellant continuously refused to complete the HGN or any other field sobriety tests, instead insisting that she proceed straight to a blood test. N.T. at 8-9. Based on Appellant's behavior, Trooper Snyder placed her into custody and transported her to Pennsylvania State Police Lykens barracks with the intention of completing a blood draw. N.T. at 9-10. Upon arrival to the police barracks, while Appellant was still in the back of the patrol car, the Trooper read to Appellant verbatim PennDOT's entire DL-26B Form, which requests that a motorist under the suspicion of DUI submit to a chemical test of his blood, warns the motorist of

the consequences of refusal to submit to that blood test, and notifies the motorist that he has no right to speak to an attorney or anyone else before deciding whether to submit to chemical testing.[2] N.T. at 10. Appellant initially expressed a willingness to submit to the blood test. N.T. at 11. However, once the Trooper and Appellant exited the patrol car and went into the processing room of the barracks, Appellant requested to read the DL-26B Form herself. N.T. at 11. Trooper Snyder provided Appellant with a copy of the Form, which she looked at for several minutes. N.T. at 11. After Appellant read over the Form, the Trooper took seven or eight minutes to re-explain the Form to her and answer any questions she had. N.T. at 11. Ultimately, Appellant changed her mind and refused to submit to the blood test. N.T. at 11.

## DISCUSSION

Section 1547 of the Pennsylvania Vehicle Code, commonly referred to as the "Implied Consent Law," authorizes suspension of the driving privileges of a licensee for a specified duration of time if the licensee is arrested for driving under the influence of alcohol or a controlled substance and the licensee refuses a police officer's request to submit to chemical testing. 75 Pa.C.S.A. § 1547. To sustain a license suspension under the Implied Consent Law, PennDOT has the initial

---

[2] The DL-26B form reads, in pertinent part, as follows:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to a blood test, your operating privilege will be suspended for at least 12 months. . . If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privileges restored.

4. You have no rights to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

burden of proving that the driver: (1) was arrested for driving while under the influence by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension. *Zwibel v. Com., Dept. of Transp. Bureau of Driver Licensing*, 832 A.2d 599, 604 (Pa. Commw. Ct. 2003) (citing *Banner v. Dept. of Transp., Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999)).

Once PennDOT meets its initial burden under the Implied Consent Law, the burden then shifts to the licensee to establish that either: (1) his refusal was not knowing or conscious; or (2) he was physically unable to take the chemical test. *Zwibel*, 832 A.2d at 606 (citing *Dept. of Transp., Bureau of Driver Licensing v. Boucher*, 691 A.2d 450 (Pa. 1997)). Our courts have repeatedly recognized that "the determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court." *Kollar v. Com., Dept. of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 340 (Pa. Commw. Ct. 2010) (citing *Barbour v. Dept. of Transp., Bureau of Driver Licensing*, 732 A.2d 1157 (Pa. 1999)); *see also Patane v. Com., Dept. of Transp., Bureau of Driver Licensing*, 192 A.3d 335, 343 (Pa. Commw. Ct. 2018) (noting that the determination as to whether a refusal was knowing or conscious is a "fact-intensive inquiry"). "Whether a refusal was knowing or conscious must be judged at the time of the warning and refusal." *Patane*, 192 A.3d at 343.

From what we can glean from Appellant's statement of errors, she is not disputing that PennDOT met its burden under the Implied Consent Law. Rather, she appears to be arguing that the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution both afford her a right to refuse a warrantless blood test. Therefore, Appellant asserts, the Implied Consent Law is unconstitutional facially, and as applied to all those

who refuse a warrantless blood test. We disagree with Appellant that the Implied Consent Law is unconstitutional as applied to *all* individuals refusing a warrantless blood test. Case law has clearly suggested that application of the Implied Consent Law to a motorist facing a civil penalty, such as a suspension of driving privileges for refusing a blood test, does not violate one's constitutional rights.

In *Birchfield v. North Dakota*, 579 U.S. 438 (2016), the Supreme Court of the United States held that states may not impose criminal penalties upon individuals who refuse to submit to a warrantless blood test because such penalties violate an individual's Fourth Amendment (as incorporated into the Fourteenth Amendment) right to be free from unreasonable searches and seizures. However, while imposition of enhanced criminal penalties, such as fines or jail sentences, for failing to submit to chemical testing is clearly unconstitutional in light of *Birchfield*, the loss of driving privileges does not amount to a criminal penalty that would be prohibited by *Birchfield*. The Supreme Court of Pennsylvania has held that permission to operate a motor vehicle on the highways of this Commonwealth is a privilege subject to such conditions as the legislature may see fit to impose. *Dept. of Transp. v. Wysocki*, 535 A.2d 77 (Pa. 1987). One of those conditions is that individuals arrested for Driving Under the Influence must consent to a chemical test or have their operating privileges suspended for at least a year, pursuant to the Implied Consent Law. 75 Pa.C.S. § 1547(b)(1)(i).

In *Birchfield*, the Supreme Court analyzed implied consent laws in light of the Fourth Amendment to the U.S. Constitution. The Supreme Court of Pennsylvania has held that the General Assembly did not intend for the Fourth Amendment to apply to our Implied Consent Law. *See Glass v. Dept. of Transp., Bureau of Traffic Safety*, 333 A.2d 768 (Pa. 1975).[3] In *Glass*, the

---

[3] "[W]e conclude that where it has been ascertained that the operator has been placed under arrest, charged with the crime of operating a motor vehicle while under the influence of intoxicating liquor and has refused the request to

Court held that the only germane considerations were whether the test was administered by a qualified person on appropriate equipment, and whether the arrest was made by a police officer with reasonable grounds to believe that an individual was operating a motor vehicle while intoxicated. *Id.* at 771-772.

Relying on *Glass*, the Pennsylvania Supreme Court subsequently held that the Fourth Amendment, particularly its exclusionary rule, should not apply in administrative license suspension hearings following a refusal to submit to testing, stating that "[t]he basis for employing the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. *Wysocki*, 535 A.2d at 79 (citing *Terry v. Ohio*, 392 U.S. 1 (1968); *Linkletter v. Walker*, 381 U.S. 618 (1965); *Mapp v. Ohio*, 367 U.S. 643 (1961)). The Court determined the legality of an arrest for driving under the influence was immaterial with regard to a license suspension proceeding for refusal to submit to chemical testing, as the language of Section 1547(b)(1) does not require that an arrest be lawful or constitutional but only that such an arrest be based upon reasonable grounds. *Wysocki*, 535 A.2d at 78-79 (citing *Glass, supra*).

The Commonwealth Court has noted that our courts have consistently followed and cited *Wysocki* for "a variety of principles distinguishing between the civil license suspension and the criminal DUI proceedings." *Regula v. Com., Dept. of Transp., Bureau of Driver Licensing*, 146 A.3d 836, 844 (Pa. Commw. Ct. 2016) (citations omitted). Specifically, both our Supreme Court and the Commonwealth Court have consistently held that "the result of a *criminal* DUI proceeding

---

submit to a breathalyzer examination, the Secretary is vested with the discretion to suspend the driving privileges of the motorist. In testing the exercise of that discretion, section 624.1 has provided that the germane considerations should be whether the test was administered by a qualified person, the arrest was made by a police officer having reasonable grounds to believe that the motorist was operating while under the influence of alcohol." *Glass*, 333 A.2d at 771-772.

and the legality of the underlying traffic stop are not relevant to an appeal of a *civil* license suspension matter based on a licensee's refusal to submit to a chemical test in accordance with the Implied Consent Law." *Regula*, 146 A.2d at 843 (emphasis in original). Furthermore, we note that in *Birchfield*, the United States Supreme Court itself made a point to distinguish between civil consequences and criminal consequences in the context of implied consent laws, specifically noting the constitutional soundness of civil consequences for refusing to submit to a blood test.[4]

In addition to raising a constitutionality argument under the Fourth Amendment, Appellant also raises an argument under Article I, Section 8 of the Pennsylvania Constitution. In a recent Pennsylvania Supreme Court case, *Commonwealth v. Bell*, 211 A.3d 761 (Pa. 2019), an appellant, Thomas Bell, argued that apart from the Fourth Amendment, there should be an independent right to refuse a warrantless blood test under Article I, Section 8, and that the Implied Consent Law violated that right. *Id.* at 766. In support of this argument, Bell reasoned that although the text of Article I, Section 8 is very similar to that of the Fourth Amendment, the Pennsylvania Supreme Court has held Article I, Section 8 to be more protective. *Id.* Moreover, Bell noted that the search of a person involves greater intrusion upon privacy interests than the search of a thing. *Id.*

Ultimately, the *Bell* court declined to rule on the issue of whether Article I, Section 8 creates an independent right to refuse a blood test because it found Bell had waived the issue by failing to raise it in the lower court. However, the court recognized the Commonwealth's argument that "in no case has a Pennsylvania court suggested Article I, Section 8 provides greater

---

[4] The Supreme Court stated: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioner does not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them. It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Birchfield*, 579 U.S. at 476 (internal citations omitted).

protections in the implied consent context, and our courts have instead referred to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution' together[,] which suggests they are coterminous in this context." *Id.* at 768 (citations and internal quotation marks omitted).

We also note that the *Bell* decision involved the question of whether Bell's refusal to submit to a blood test could be admitted as evidence in a criminal prosecution for a DUI, whereas the instant matter involves a suspension of Appellant's driver's license for refusing to submit to a blood test. As emphasized above, in the context of constitutional challenges to implied consent laws, civil penalties and criminal consequences are routinely distinguished, and court rulings regarding the constitutionality of implied consent laws as applied to criminal prosecutions routinely do not apply to the same laws when applied in the context of a civil penalty such as a license suspension. Therefore, even assuming arguendo that Article I, Section 8, does provide an independent right to refuse a blood test in the context of a criminal prosecution, it does not necessarily follow that such right extends to the context of a license suspension case.

Considering the foregoing, we believe that Appellant's claims raised on appeal are without merit, and the instant appeal should be denied.

BY THE COURT:

_____
Richard A. Lewis, Senior Judge

**MEMORANDUM DATE: March** _18_ **, 2025**

Distribution:

Terrance M. Edwards, Esquire, PennDOT, Office of Chief Counsel, Riverfront Office Center, 1101 South Front Street, Third Floor, Harrisburg, PA 17104-2516
George H. Matangos, Esquire, Pennsylvania Department of Transportation, Office of Chief Counsel, Riverfront Office Center, 1101 South Front Street, Third Floor, Harrisburg, PA 17104-2516
Gary Lysaght, Esquire, 5258 North Front Street, Harrisburg, PA 17110
Commonwealth Court of Pennsylvania, Prothonotary's Office, 601 Commonwealth Avenue, Suite 2100, P.O. Box 69185, Harrisburg, PA 17106